## PAN-AMERICAN BANK & TRUST CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

### Docket No. 2070. Promulgated December 17, 1926.

The petitioner *held* on the evidence not to have been a dealer in securities during 1918, and was not, therefore, entitled to inventory unsold securities at the market value.

*Eugene J. McGivney, Esq., Isom J. Guillory, Esq.,* and *E. Barrett Prettyman, Esq.,* for the petitioner.
*Henry Ravenel, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in income and profits taxes for 1918 in the amount of $1,154.05. The principal question involved is whether the petitioner bank was a dealer in securities in 1918, and, if so, whether it suffered a loss in the decline of the value of its securities.

### FINDINGS OF FACT.

During the year 1918 the petitioner was engaged in the general banking business at New Orleans, La., under the name of The Metropolitan Bank. During the year 1919 the name was changed to Pan-American Bank & Trust Co.

In addition to its general banking business, the petitioner bought and held corporate stocks and bonds and municipal bonds as investments. The petitioner also sold corporate and municipal bonds to its depositors. It also bought Liberty bonds and other securities of the Federal Government and sold them to its clients from patriotic motives. Some of the Liberty bonds were sold for cash, and some were sold on a subscription or installment basis. During 1918 the petitioner concentrated its selling efforts on Liberty bonds. The petitioner's sales of Liberty bonds were:

| | 1917. | 1918. |
|---|---|---|
| Subscriptions | $237, 085. 00 | |
| Investments | 2, 750. 00 | $2, 400. 00 |
| Savings department Liberty bond accounts | 63, 050. 00 | 44, 150. 00 |
| Third Liberty loan | | 376, 143. 43 |
| Fourth Liberty loan bonds | | 530, 575. 00 |
| Total | 302, 885. 00 | 943, 268. 43 |

The petitioner's sales of corporate and municipal bonds to depositors were:

1917.

| | | | |
|---|---:|---|---:|
| June 26 | $8,000 | New Orleans Ry. & Elec. Light bonds | $6,568.00 |
| June 26 | 7,000 | Southern Pacific 5% bonds | 7,105.00 |
| July 2 | 1,000 | Public Improvement bonds | 958.67 |
| | 16,000 | | 14,631.67 |

1918.

| | | | |
|---|---:|---|---:|
| April and May | 35,000 | La Fourche Levee District bonds | 35,000.00 |
| July 8 | 5,000 | La Fourche Levee District bonds | 5,000.00 |
| July 9 | 10,000 | La Fourche Levee District bonds | 10,000.00 |
| July 10 | 15,000 | La Fourche Levee District bonds | 15,000.00 |
| November 11 | 1,000 | Audobin Bldg. bond | 1,000.00 |
| | 66,000 | | 66,000.00 |

The sales made in 1917 were to two depositors of the bank. Those made on June 26, 1917, were made to the same person. The sales in 1918 were also made to two depositors. The sales made in April, May and July, 1918, were to the same depositor. The parties to whom sales were made in 1918 were not the same as those to whom sales were made in 1917. The balance sheets filed with petitioner's 1918 return show the following securities at the end of the years 1917 and 1918:

| Domestic corporations. | 1917. | 1918. |
|---|---:|---:|
| 464 shares Nashville Ry. & Lt. Co. (Preferred) | $32,480.00 | $32,480.00 |
| 150 shares Nashville Ry. & Lt. Co. (Preferred) | 10,500.00 | 10,500.00 |
| 1 share New Orleans Stock exchange | 2,000.00 | 2,000.00 |
| 70 shares Dixie Brewing Co | 5,250.00 | 4,725.00 |
| 8 shares Maison Blanche Realty Co | 600.00 | 600.00 |
| 10 shares Newcomb Realty Co | 300.00 | 300.00 |
| 25 shares N. O. Cold Storage & Warehouse Co | 2,500.00 | 2,500.00 |
| *Bonds—Exempt.* | | |
| $2,500.00 Buras Levee District | 2,500.00 | 2,500.00 |
| 9,400.00 Smoke Bead Drainage District | 9,700.00 | 9,400.00 |
| 100,000.00 Lafourche Levee District | 100,000.00 | |
| Iberville Parish Public School Bonds | 174.37 | 174.37 |
| 50,000.00 Federal Land Bank Bonds at 4½% | 50,500.00 | 50,500.00 |
| 2,100.00 Arcadia Parish School Bonds | 2,100.00 | |
| *Bonds—Others.* | | |
| 160,000.00 N. O. Railway & Light Co. Bonds | 121,600.00 | 104,000.00 |
| 50,000.00 Little Rock Ry. & Elec. Bonds | 50,000.00 | 47,500.00 |
| 17,000.00 Nashville Ry. & Light Co | 16,490.00 | 16,150.00 |
| 500.00 N. O. Land Company Bonds | 500.00 | 500.00 |
| 1,500.00 Southern Pine Company Bonds | 1,500.00 | 1,500.00 |
| 99,500.00 Maison Blanche Bldg. Annex Bonds | | 99,500.00 |
| 13,500.00 Joubert & Gosline Mach. & Fdy. (Mtg. Bds.) | 13,500.00 | |
| 100,000.00 Red River, Atch. & B. B. Levee Dist. (Borrowed) | 100,000.00 | |

The bank followed the consistent practice of inventorying its securities every six months. The board of directors, regularly in May and November of each year, appointed a committee to investigate the affairs of the bank, and this committee regularly included

in its activities an examination of the securities carried by the bank and determined the then market value thereof. The values at which securities were carried on the books were adjusted to conform to the market values as determined by the committee.

The market values and reductions recommended by the committee at various dates were:

### May 18, 1916.

| | | |
|---|---|---:|
| 152,000 | N. O. Railway & Light Co. bonds, at_____ | $86. 00 |
| 50,000 | Little Rock Railway & Light Co. bonds, at_____ | 104. 00 |
| 6,300 | Arcadia Parish 5% bonds, at_____ | 100. 00 |
| | Iberville Parish, balance_____ | 174. 37 |
| 2,500 | Buras Levee District 5% bonds, at_____ | 100. 00 |
| 12,000 | Nashville Railway & Light Co. bonds 5%_____ | 103. 00 |
| 1,500 | Southern Pine Co. 6% bonds, at_____ | 100. 00 |
| 10,300 | Smoke Bend Drainage District 5% bonds_____ | 100. 00 |
| 464 | shares Nashville Railway & Light Co_____ | 78. 00 |
| 1,347 | shares River Front Realty Co_____ | 2. 50 |
| 1 | share New Orleans Stock Exchange_____ | 1,500. 00 |

### Dec. 5, 1916.

| | | |
|---|---|---:|
| 152,000 | N. O. Railway & Light Co. bonds, 85_____ | $129,200. 00 |
| 50,000 | Little Rock Railway & Light Co., 104_____ | 52,000. 00 |
| 15,000 | Joubert & Goslin M. & F. Co., 100_____ | 15,000. 00 |
| 17,000 | Nashville Railway & Light Co., 102_____ | 17,340. 00 |
| 500 | N. C. Land Company bonds, 100_____ | 500. 00 |
| 10,000 | Smoke Bend Drainage District, 100_____ | 10,000. 00 |
| 4,200 | Arcadia Parish School Bd. 5% bds., 100_____ | 4,200. 00 |
| 2,500 | Buras Levee District bonds, 100_____ | 2,500. 00 |
| 1,500 | Southern Pine Co. bonds, 100_____ | 1,500. 00 |
| | Balance Iberville Parish bonds_____ | 174. 37 |
| 464 | shares Nashville Railway & Lt. Co. Preferred, 75_____ | 34,800. 00 |
| 1,347 | shares River Front Realty Co., 2.50_____ | 3,367. 50 |
| 1 | share New Orleans Stock Exchange_____ | 2,000. 00 |
| | Total_____ | 272,581. 87 |

### May 31, 1917.

No reduction recommended.

### Nov. 30, 1917.

$160,000 N. O. Rway. & Lt. Co. 4½ bonds, to 76.00.
 50,000 Little Rock Ry. & Lt. Co. 5% bonds, to par.
 17,000 Nashville Ry. & Lt. Co. 5% bonds, to 97.00.
   464 shares, Nashville Rway. & Lt. Co. Preferred stock, to 70.00.
 1,347 shares River Front Realty Co. stock, to nothing.

### May 30, 1918.

* * * That the bonds of the New Orleans Railway & Light Company owned by the bank be reduced in value as carried on the books to 70 cents.

*Nov. 27, 1918.*

$160,000 N. O. Ry. & L. Co. bonds, at 70, reduced 5, 65_____ $8,000.00
  50,000 L. R. Ry. & L. Co. bonds, at 100, reduced 5, 95_____ 2,500.00
  17,000 Nash. Ry. & Lt. Co. bonds, at 97, reduced 2, 95_____ 340.00

The reduction made June 12, 1918, as a result of the committee's recommendations of May 30, amounted to $9,600. The reduction made December 31, 1918, as a result of the recommendations of November 27, amounted to $10,840. The total reductions made during the year amounted to $20,440. No claim for this amount was made in the income-tax return filed by the petitioner, but, in an affidavit filed with the respondent by the petitioner in the course of the audit of the return, the amount was claimed as a loss. The respondent refused to allow the petitioner's contention.

The bid and asked prices on December 31, 1918, on the New Orleans Stock Exchange of the securities thus reduced were:

| | Bid. | Asked. |
|---|---|---|
| New Orleans Railway and Light 4½'s_____ | 57½ | 58⅞ |
| Little Rock Electric 5's_____ | 89½ | 95½ |
| Nashville Railway and Light Co._____ | 89½ | 95 |

The nearest available dates to December 31, 1918, on which sales of these bonds were made on the New Orleans Exchange were: Little Rock Electric 5's on November 12, 1918, at 85½; New Orleans Railway and Light 4½'s on December 31, 1918, at 57½; Nashville Railway and Light 5's on December 12, 1918, at 90.

The petitioner's ledger contained a "Stocks and Bonds" account. In this account were recorded petitioner's dealings in stocks and bonds held as investments, those purchased for resale, those which petitioner had borrowed, and those which it had held previously as collateral for loans and on which it had foreclosed. Until 1918 a portion of the transactions in Liberty bonds were recorded in this account, but during that year separate accounts were kept for the different issues of Liberty bonds.

The ledger of the petitioner contained an "Exchange" account to which was carried any commissions or profits received by the petitioner from the sale of stocks and bonds. To this account was also carried exchange on drafts and on collections. The "Exchange" account was carried into the profit and loss account.

The vice president of the petitioner bank owned a share of stock in the New Orleans Stock Exchange. The ownership of the share of stock vested no trading rights in the owner, nor did it make him a member of the exchange.

In Schedule A (3) attached to the petitioner's income-tax return, its income "From Discounts" is shown as $95,551.94, and "From Exchange" as $13,059.39.

The correct amount of tax for 1917 to be prorated for the purpose of adjusting the 1918 invested capital is $7,619.94.

Invested capital for 1918 was understated by $22,650, representing a loss charged off on the books of the petitioner in 1917 on account of a decline in its inventory of securities.

### OPINION.

TRAMMELL: The question presented is whether the petitioner is entitled to a deduction on account of the shrinkage in value of securities which it had on hand at the end of the taxable year.

It claims a deduction upon the ground that it was a dealer in securities and that it comes within the scope of article 1585, Regulations 45, as amended by T. D. 3296, C. B. I-1, p. 40, which provides as follows:

A dealer in securities, who in his books of account regularly inventories unsold securities on hand either (a) at cost or (b) at cost or market, whichever is lower, or (c) at market value, may make his return upon the basis upon which his accounts are kept; provided that a description of the method employed shall be included in or attached to the return, that all the securities must be inventoried by the same method, and that such method must be adhered to in subsequent years, unless another be authorized by the Commissioner. For the purpose of this rule a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived therefrom. If such business is simply a branch of the activities carried on by such person, the securities inventoried as here provided may include only those held for purpose of resale and not for investment. Taxpayers who buy and sell or hold securities for investment or speculation, and not in the course of an established business, and officers of corporations and members of partnerships, who in their individual capacities buy and sell securities, are not dealers in securities within the meaning of this rule. * * *

The above article of the Regulations is based upon section 203 of the Revenue Act of 1918, which provides as follows:

That whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

The above article, in our opinion, in so far as it is pertinent to the issue now before us, is consistent with and reasonably adapted

57694°—27——57

to carrying out the provisions of the statute. A dealer in securities, who has securities on hand at the end of the year, is, in our opinion, as much entitled to inventory them, and an inventory thereof is just as necessary clearly to determine the income, as is a dealer in merchandise, strictly speaking. To such a dealer securities are his merchandise. The question now is whether the petitioner was a dealer in securities.

The petitioner alleged in its petition that it operated a stock and bond department, but at the hearing no testimony was introduced on this point.

It was also alleged in the petition that petitioner owned a share of stock in the New Orleans Stock Exchange, but the testimony was to the effect that the share of stock was owned by the vice president, who was not a member of the New Orleans Stock Exchange, and that the ownership vested no trading privileges in the owner.

In support of its contention that it was a dealer in securities, the petitioner showed that during the year 1917 it made three sales of corporate and municipal bonds to its depositors, two of which sales were made on the same date to the same individual. Six days later the other sale was made. During 1918 the petitioner made sales of corporate and municipal bonds to two of its depositors. The sales to one of them were made in the months of April, May and July, while the other sale was made in the month of November to another depositor. The testimony does not show whether the bank received a commission on these sales, or what profit, if any, it made on them. Neither is it shown that these transactions were not made by the bank as an accommodation to its depositors.

During 1917 and 1918 the petitioner, in common with other banks of the country and with dealers in securities, out of patriotic motives handled a large volume of Liberty bonds. Such patriotic services precluded charging or allowing commissions on these transactions. These services do not, in our opinion, indicate that the petitioner was a dealer in such securities.

Petitioner's holdings and dealings in corporate bonds and stocks and municipal bonds were recorded in the " Stocks and Bonds " account. Petitioner has made no attempt to separate its securities into classes such as those purchased for investment and those purchased and held for resale.

In Schedule A (3) accompanying petitioner's return, its income " From Exchange " is shown as $13,059.39, but since the exchange on drafts and exchange on collections were also carried to petitioner's " Exchange " account, we have no way of knowing what part, if any, of the $13,059.39 represents commissions or profits on transactions in securities bought for sale.

From the evidence we are of the opinion that the infrequent and isolated transactions in corporate and municipal bonds with the depositors of petitioner are not sufficient to constitute petitioner a dealer in securities.

*Judgment will be entered on 15 days' notice, under Rule 50.*