**MIRRO–DYNAMICS CORPORATION,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant (three cases).**

**Nos. 64–692 JWC–64–694 JWC**

United States District Court.
S. D. California,
Central Division.

Aug. 30, 1965.

' Wyshak & Wyshak, Los Angeles, Cal., for plaintiff.

Manuel L. Real, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Chief, Tax Division, Arthur M. Greenwald, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

CURTIS, District Judge.

This is a consolidation of defendant's motions for summary judgment in three related cases in each of which plaintiff seeks a refund of federal income taxes.

Jurisdiction is conferred by Title 28 U.S.C. §§ 1340 and 1346(a) (1).

For its fiscal year ending October 31, 1962, plaintiff reported a loss from the purchase and sale of securities and other miscellaneous stock transactions in the amount of $905,861.47. Plaintiff claims this loss as an ordinary loss and has applied to it the operating loss carry-back provisions of the Internal Revenue Code, resulting in claimed refunds for the fiscal years ending October 31, 1959 (No. 64–692–JWC) and October 31, 1960 (No. 64–694–JWC). In No. 64–693–JWC the plaintiff takes the position that its unsold securities on hand October 31, 1961, costing $1,107,351.61 constituted business inventory and that it should be entitled to value this inventory at cost or market, whichever is lower, in accordance with applicable provisions of the Internal Revenue Code.

Plaintiff further claims as a business expense federal stock transfer taxes in the sum of $1,592.60 paid during the fiscal year ending October 31, 1962.

Although there are other items claimed in the pleadings, these have all been resolved by the parties leaving as the only remaining issues to be here considered plaintiff's contentions that:

1. The loss of $905,861.47 was an ordinary business loss and not a capital loss.

2. The marketable securities on hand on October 31, 1961, were a form of business inventory within the meaning of the Internal Revenue Code, and

3. The federal stock transfer tax should be treated as a business expenditure under the circumstances present here.

The following are the undisputed facts:

Prior to April, 1961, plaintiff was engaged in the business of manufacturing and selling sliding glass doors under the name of Fullview Corporation. In the spring of 1961 the plaintiff sold substantially all of its assets to Cal Tech Systems, Inc., receiving net cash proceeds therefor in the amount of $1,041,271.00. Thereafter plaintiff changed its name to Mirro-Dynamics Corporation, discontinued its sliding glass door business and applied the proceeds from the sale to the purchase of marketable securities. During the fiscal years ending October 31, 1961, and October 31, 1962, the plaintiff purchased and sold securities and conducted other miscellaneous stock transactions solely for its own account. During these years, plaintiff had accounts with several established brokerage firms and through these bought and sold a substantial number of securities, summaries of which were recorded in plaintiff's general ledger under an account entitled "Stock Investment Account No. 123". Plaintiff filed federal income tax returns for the years ending October 31, 1961, and 1962, the latter reporting a loss of $905,861.47 from these security

transactions and designating such loss as a capital loss. During these years neither the plaintiff nor its officers were members of any stock exchange, nor were they licensed or registered with the Securities and Exchange Commission as a broker or dealer in marketable securities, nor were they licensed or registered by the State of California to sell marketable securities to the general public.

■ The defendant contends that under the above facts, and as a matter of law, plaintiff's loss of $905,861.47 was a capital loss, subject to the provisions of Title 26 U.S.C. § 1211(a) and not an ordinary loss subject to the carryback provisions of 26 U.S.C. § 172. With this contention I agree.

The characterization of the loss is dependent upon whether the securities involved in plaintiff's activities constituted capital assets within the meaning of Title 26 U.S.C. § 1221 which provides:

"§ 1221. Capital asset defined

"For purposes of this subtitle, the term 'capital asset' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

"(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; * * *."

■ Securities aside from those sold by dealers in the usual course of their business do not fall within any of these express exclusions of this section. Booth Newspapers, Inc. v. United States, 303 F.2d 916, 157 Ct.Cl. 886 (1962).

■ The plaintiff here is not a dealer, for a dealer is one who, as a merchant, buys and sells securities to customers for the profit thereon. Schafer v. Helvering, 299 U.S. 171, 57 S.Ct. 148, 81 L.Ed. 101 (1936).

Section 1.471–5 of the Regulations dealing with business inventories defines a "dealer in securities" as follows:

"§ 1.471–5 Inventories by dealers in securities

\*　　\*　　\*　　\*　　\*　　\*

" \* \* \* For the purposes of this section, a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived therefrom. \* \* \* Taxpayers who buy and sell or hold securities for investment or speculation, irrespective of whether such buying or selling constitutes the carrying on of a trade or business \* \* \* are not dealers in securities within the meaning of this section."

■ Since it is undisputed that the plaintiff purchased and sold securities solely for its own account and not for customers in the ordinary course of a trade or business or otherwise, it follows as a matter of law that the plaintiff is not a dealer within the meaning of the Act and that the securities are capital assets and may not properly be considered business inventory.

Plaintiff argues that the issue is not whether plaintiff's securities constitute capital assets but whether plaintiff's dealings in securities resulted in an ordinary loss. However, § 165 of the Internal Revenue Code dealing with deductible losses provides in part:

"§ 165. Losses

\*　　\*　　\*　　\*　　\*　　\*

(f) Capital losses.—Losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212.

\* \* \* "

The crucial question still remains: Are plaintiff's securities capital assets or not?

Plaintiff puts much reliance on Corn Products Refining Company v. Commissioner of Internal Revenue, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955). The court there held that, where corn was an essential raw material in the taxpayer's business and the taxpayer had entered into a program of buying and selling corn futures to protect itself against a rise in the price of corn, the taxpayer's transactions in the futures were an integral part of its business designed to protect its manufacturing operations and that any gain or loss realized by the taxpayer from these transactions would be ordinary and not capital in nature.

The courts have, in a number of subsequent cases, applied this flexible approach to the concept of "capital asset". In Electrical Fittings Corp., 33 T.C. 1026 (1960), the taxpayer had participated with two other companies in the formation of a corporation which was to manufacture ductile iron, an essential raw material in the manufacturer's operation, which it had difficulty in obtaining from regular sources. The taxpayer acquired one-third of the preferred and one-fourth of the common stock in the newly formed corporation. Subsequently, more desirable material became available to the taxpayer, and it sold its stock in the ductile iron at a loss. The court held its loss was not capital in nature but was fully deductible as an ordinary loss, citing Commissioner of Internal Revenue v. Bagley and Sewall, 221 F.2d 944 (2nd Circuit 1955); Tulane Hardwood Lumber Company, 24 T.C. 1146 (1955); Smith and Welton, Inc. v. United States, 164 F.Supp. 605 (E.D.Va.1958). But these cases are not applicable here in light of the distinction drawn by the Tax Court in the Electrical Fittings Case, where it said:

"The tax treatment of the loss on the sale of \* \* \* stock depends on the purpose for which the petitioner acquired the stock. Stock purchased as an investment is a

capital asset; when sold, it creates a capital gain or loss. But stock purchased in the ordinary course of business where the only purpose is to insure a vital source of inventory is not a capital asset, and the loss upon its sale is deductible from ordinary income. * * * "

I hold, therefore, that the securities in which the plaintiff dealt during the years in question were capital assets and that the losses resulting from these stock transactions were capital losses, I further hold that plaintiff's securities do not constitute business inventory within the meaning of the Internal Revenue Act.

This, then, leaves the question of whether the federal stock transfer tax of $1,592.60 constitutes a deductible business expense within the meaning of Title 26 U.S.C. § 162(a). Plaintiff contends that it is. The Government contends that the tax is in fact a selling cost and may only be offset against the selling price in determining capital loss or gain.

In the years in question the law applicable to this problem was contained in the following sections:

Section 212 provided in part:

"§ 212. Expenses for production of income

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

"(1) for the production or collection of income; * * *."

Section 164(b) provided:

" § 164. Taxes

* * * * * *

(b) Deduction denied in case of certain taxes.—No deduction shall be allowed for the following taxes:

* * * * * *

(3) * * * Federal excise and stamp taxes * * * but this paragraph shall not prevent such duties and taxes from being deducted under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income).

* * * "

Section 162 provided in part:

" § 162. Trade or business expenses

(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.

* * *

* * * "

In excluding from the "no deduction allowance" federal stamp taxes where related to "a trade or business", the effect was to withhold the deduction allowance from the casual investor, but to allow it to a taxpayer engaged in a trade or business within the meaning of the Act.

But at what point does a taxpayer become "one carrying on a trade or business"? The Bureau has ruled administratively (I.T. 3806, 1946–2 Cum. Bul. 41):

"(1) Federal stamp taxes paid on transfers * * * of securities * * * upon sale thereof as a dealer (merchant) therein may be treated as ordinary and necessary business expenses.

"(2) Federal stamp taxes paid on transfers * * * of securities or real estate upon sales thereof as a trader or other nondealer are selling costs or offsets against selling prices to be taken into account only in determining (net) amounts realized and gains or losses under section 111 of the Code * * * "

While I.T. 3806 is not a regulation and does not have the force and effect of law, it does seem to be consistent with the pronouncements of the Supreme Court. That Court has held that sales commissions paid by a taxpayer engaged in buying and selling securities on his own behalf are not deductible as ordinary and necessary expenses, but are offsets against the gross selling price in determining capital gain or loss. Sprec-

kles v. Commissioner of Internal Revenue, 315, U.S. 626, 62 S.Ct. 777, 86 L.Ed. 1073 (1942); Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52 (1938).

I hold, therefore, that federal stamp taxes paid on the sale of securities by a taxpayer engaged in the business of buying and selling securities on its on own behalf are not deductible as ordinary and necessary expenses, but may be offset against the gross selling price in determining capital gain or loss.

Since it appears from the agreed facts that the plaintiff is not a dealer but is at the most a trader on his own account, the rule just enunciated is applicable.

Defendant's motion for summary judgment, therefore, in all cases is hereby granted.