**MIRRO–DYNAMICS CORPORATION, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**Nos. 20799–20801.**

United States Court of Appeals
Ninth Circuit.

March 10, 1967.

Rehearing Denied April 21, 1967.

6. Section 3 of the Revised Organic Act of the Virgin Islands.

Robert H. Wyshak, Lillian W. Wyshak, Wyshak & Wyshak, Los Angeles, Cal., for appellant.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harold C. Wilkenfeld, Thomas Silk, Jr., Attys., Tax Div., Dept. of Justice, Washington D. C., Edwin L. Miller, Jr., U. S. Atty., Arthur M. Greenwals, Asst. U. S. Atty., San Diego, Cal., Manuel L. Real, U. S. Atty., Los Angeles, Cal., for appellee.

Before JONES, Senior Judge, United States Court of Claims,* and BARNES and ELY, Circuit Judges.

MARVIN JONES, Senior Judge:

Taxpayer, a California corporation, appeals the judgment of the United States District Court for the Southern District of California granting the government's motion for summary judgment. Mirro-Dynamics Corp. v. United States, 247 F.Supp. 214 (1965).

Taxpayer claims an overpayment of federal income taxes for the fiscal years ending October 31, 1958, 1959, and 1960. Timely claims for refund were filed. Jurisdiction was conferred on the district court by 28 U.S.C. §§ 1340 and 1346(a) (1). Jurisdiction is conferred on this court by 28 U.S.C. § 1291.

From 1947 to April 1961, taxpayer, using the names Pacific Bolt Corporation and Fullview Corporation, manufactured and sold sliding glass doors. In April 1961, taxpayer sold its assets for about $1 million, terminated its previous operations entirely, changed its name to Mirro-Dynamics Corporation, and began the purchase and sale of securities. Apparently taxpayer was successful initially, but during 1962 it suffered losses on the transactions.

Before the district court, taxpayer asserted that these losses were ordinary losses—resulting from the sale at a loss of non-capital assets—which could properly be carried back to the profitable years of 1959 and 1960, producing a tax refund. Int.Rev.Code of 1954, § 172. Taxpayer also claimed that it had repriced its closing inventory for 1961, giving rise to a net operating loss to be carried back to 1958. Third, taxpayer claimed a refund caused by a deduction for federal transfer taxes paid in fiscal year 1962. 247 F.Supp. at 216.

The basis of taxpayer's argument is that after April 1961, it was in the business of purchasing and selling securities. While it engaged in thousands of separate transactions, it contends that it did not at any time deal from an investment motive. The securities, taxpayer claims, were property held for sale to its customers and therefore were non-capital because within the exceptions to the definition of capital assets set forth in Int.Rev.Code of 1954, § 1221(1):

§ 1221. Capital asset defined

For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

The government responded to this argument by noting that during the period in question neither taxpayer nor its officers were members of a stock exchange, nor were they licensed by either the Securities and Exchange Commission or the State of California to sell securities to the public. It followed that taxpayer bought and sold the securities on its own account, since it could not have custom-

* Sitting by designation of the Chief Justice.

ers. The district court agreed, and held as a matter of law that this disability prevented taxpayer's assets from coming within the exceptions to § 1221(1), specifically the phrase requiring the property to be held "for sale to customers."

Taxpayer, in an attempt to show that its assets qualify under this phrase, cites Malat v. Riddell, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966), as differentiating between gains and losses "arising from the everyday operation of a business," and the "realization of appreciation accrued over a substantial period of time." Id. at 572, 86 S.Ct. at 1032. Taxpayer contends that since its purchases and sales were made in less than a substantial period of time they were made in the course of its everyday operation and therefore resulted in "profits and losses arising from the everyday operation of a business." In regard to the requirement of § 1221(1) that the sales must be to customers, taxpayer urges that if one is in the business, any sale is to a customer. Therefore, the sale at a loss of these non-capital assets resulted in an ordinary loss.

However, the difficulty which taxpayer faces here, and which it has not overcome, is not in showing that it bought and sold securities in the same time sequence as a legitimate dealer would, or even in showing that the securities it sold eventually reached customers, but in showing it was a dealer with customers to whom it could sell securities in the ordinary course of business. This becomes particularly clear when we note that the phrase "to customers" was added to the predecessor of § 1221(1) to exclude from the definition of capital assets only those securities bought and sold by dealers, and not those traded by investors on their own account. Section 117, Revenue Act of 1934, c. 277, 48 Stat. 680, 714; H.Conf.Rep.No.1385, 73d Cong., 2d Sess., p. 22 (1939–1 Cum.Bull. (Part 2)) 627, 632; Cf. S.Rep.No.558, 73d Cong., 2d Sess., p. 12 (1939–1 Cum. Bull. (Part 2)) 586, 595.

■ We therefore affirm the holding of the district court that the securities bought and sold by taxpayer were capital assets and that losses resulting from these transactions were capital losses, not susceptible to the carryback provisions of § 172.

■ With respect to taxpayer's second claim, it follows that these capital assets were not business inventory. Taxpayer was not a dealer in securities within the definition contained in Treas. Reg. § 1.471–5. We therefore affirm the district court on this point also.

■ Taxpayer's contention that the federal stock transfer stamp taxes which it paid in 1962 should be deductible as an ordinary and necessary business expense under § 162 is perhaps the most troublesome. The United States Court of Claims, in Hirshon v. United States, 113 F.Supp. 444, 445 (1953), stated:

If one's business is that of trading in stocks, and if he must pay a tax whenever he trades, the tax would seem to be an ordinary and necessary business expense, and therefore deductible under the express terms of the statute [predecessor to § 162].

The court held in *Hirshon* that the government could not on the basis of an administrative instruction (I.T. 3806, 1946–2 Cum.Bull. 41) exclude traders (i. e., those buying and selling securities on their own account, like taxpayer here) from the deduction, while allowing it to dealers.

In the case before us the district court viewed I.T. 3806 in a different light, as distinguishing between those who carry on a trade or business in securities and who are entitled to a deduction, and investors on their own account, who are not so entitled. 247 F.Supp. at 218. Under this approach the tax paid by appellant would be considered a selling cost. We accept this view since we have already held that taxpayer was not a dealer. It should be noted however that taxpayer was more than a casual investor. The sole function of the Mirro-Dynamics Corporation after April 1961, was buying and selling securities. On a close question we agree with the district court

that while taxpayer may offset the amount paid for federal stamp taxes against gross selling price, it may not deduct the amount as an ordinary and necessary business expense.

Affirmed.