JAMES M. FERGUSON, SR., & MARY V. FERGUSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ferguson v. Commissioner
Docket No. 2542-71.
United States Tax Court
T.C. Memo 1974-244; 1974 Tax Ct. Memo LEXIS 74; 33 T.C.M. (CCH) 1082; T.C.M. (RIA) 74244; September 19, 1974, Filed. James M. Ferguson, Sr., pro se. Richard H. Gannon, for the respondent. GOFFEE MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioners' income tax for the taxable year 1968 in the amount of $5,145. *75 The parties have conceded some of the issues. The issues remaining to be decided are as follows: 1. Was Petitioner James M. Ferguson, Sr. a "dealer" in commodities thereby entitling him to use inventories to determine his profits or losses or was he, instead, an "investor" or "trader"? Resolution of this issue will also determine whether expenses relating to this activity are deductible under section 212 of the Internal Revenue Code[1] or section 162 of the Internal Revenue Code; and 2. Are petitioners entitled to deduct moving expenses in the amount of $263? FINDINGS OF FACT Some of the facts are stipulated. The stipulation of facts and exhibits are incorporated by reference. Petitioners are husband and wife who resided in El Segundo, California, when they filed their petition. Their joint Federal income tax return for the taxable year 1968 was filed with the Director of the Western Service Center, Ogden, Utah. James M. Ferguson, Sr., (hereinafter referred to as petitioner) was an engineer *76 employed in the aerospace industry during and prior to 1968. In 1967, he concluded that the aerospace industry was declining and because of his age he should seek another livelihood. He, therefore, enrolled and completed a course of study in investing at the University of California at Los Angeles. He decided to purchase and sell commodity futures and in order to avoid any difficulties with the Internal Revenue Service as to the taxation of such endeavor, on December 7, 1967, he telephoned the taxpayer assistance section of the office of the District Director in Los Angeles. He inquired as to how he could establish himself as a "day trader" in stocks and commodities and was advised that he could be so qualified if he had 200 transactions per year. In January 1968, petitioner commenced trading in commodity futures through a broker. During 1968 he completed 290 such transactions. At the end of 1968 he held potato contracts which had decreased in market value $15,610 below his cost. During 1968 petitioner was not engaged in farming or farm related activities, in the wholesale or retail business of selling food, or in a manufacturing operation which utilized food commodities *77 as an integral part of its processes.
On their income tax return for the taxable year 1968, petitioners claimed an ending inventory of commodity futures of $15,610 and reported the net gains over losses as income from a trade or business. The Commissioner, in his statutory notice of deficiency, determined that petitioner was not engaged in a trade or business of buying and selling commodities as a dealer, but was instead, an investor or trader and, therefore, not entitled to claim an ending inventory. He further determined that petitioner realized a net short-term capital gain from his activities as a trader or investor and the expenses petitioners claimed as ordinary and necessary business expenses were not allowable as such but were allowable only as expenses incurred in connection with transactions entered into profit or for the production of income. Petitioners claimed on their return an exclusion from income for moving expenses of $263 which the Commissioner disallowed in his statutory notice of deficiency on the grounds that the distance of the move did not exceed 20 miles. OPINION The primary issue is whether petitioner was a dealer in commodities and thereby entitled *78 to utilize inventories in computing his net profit from such operations and also thereby entitled to claim his expenses in that connection as ordinary and necessary business expenses. Respondent contends that petitioner was an investor or trader in commodities and the transactions resulted in capital gains and losses. If the commodity contracts were capital assets in the hands of petitioner he cannot use inventories to compute his net gain or loss. Sec. 1221, Internal Revenue Code. It is quite clear from the facts that petitioner was not a dealer in commodities. We distinguished a dealer from a trader in George R. Kemon, 16 T.C. 1026, 1032-1033 (1951) as follows: Those who sell "to customers" are comparable to a merchant in that they purchase their stock in trade, in this case securities, with the expectation of reselling at a profit, not because of a rise in value during the interval of time between purchase and resale, but merely because they have or hope to find a market of buyers who will purchase from them at a price in excess of their cost. This excess or mark-up represents remuneration for their labors as a middle man bringing together *79 buyer and seller, and performing the usual services of retailer or wholesaler of goods. * * * Such sellers are known as "dealers." Contrasted to "dealers" are those sellers of securities who perform no such merchandising functions and whose status as to the source of supply is not significantly different from that of those to whom they sell. That is, the securities are as easily accessible to one as the other and the seller performs no services that need be compensated for by a mark-up of the price of the securities he sells. The sellers depend upon such circumstances as a rise in value or an advantageous purchase to enable them to sell at a price in excess of cost. Such sellers are known as "traders." Whether an individual is a dealer or a trader is a question of fact. George R. Kemon, supra.The facts in this case amply demonstrate that petitioner was a trader not a dealer. He had no customers nor was he engaged in any business which utilized the commodities so that the purchases were a hedge against raw materials used in that business. Corn Products Refining Co. v. Commissioner, 350 U.S. 46 (1955). All of petitioner's transactions were handled *80 through a broker. Faroll v. Jarecki, 231 F.2d 281, 287 (C.A. 7, 1956), certiorari denied 352 U.S. 830 (1956). Petitioner was not licensed to sell commodity futures to others. Mirro-Dynamics Corp. v. United States, 374 F.2d 14 (C.A. 9, 1967), certiorari denied 389 U.S. 896 (1967). Petitioner claims reliance upon advice from the district director's office for his position that he was a dealer. It is regrettable that petitioner sought advice from taxpayer assistance and relied thereon to his own detriment but the law is well settled that erroneous advice as to the law from agents of the Commissioner of Internal Revenue is not binding on the Commissioner. Darling v. Commissioner, 49 F.2d 111, 113 (C.A. 4, 1931), affirming 19 B.T.A. 337 (1930), certiorari denied 283 U.S. 866 (1931); Alfred Fortugno, 41 T.C. 316, 323-324 (1963), affd. 353 F.2d 429 (C.A. 3, 1965). Accordingly, we hold that petitioner was not a dealer but was, instead, a trader in commodities. He is not, therefore, entitled to compute his gains from dealing in commodities' futures by the use of inventories *81 and his expenses are deductible under section 212 instead of section 162 of the Internal Revenue Code. The remaining issue involves the deductibility of moving expenses of $263. The Commissioner disallowed the deduction because petitioners "moved less than 20 miles when they changed their residence." Petitioners introduced no evidence at trial on this issue but set forth facts in their reply brief. We do not find them as facts because they were not presented at trial or stipulated. Nevertheless, because petitioners were not represented by counsel we will consider them only because if we assume the facts to be true (which we do), respondent's position is sustained. On June 30, 1967, petitioners moved from a residence in Sherman Oaks, California to motels in Van Nuys and Santa Monica and stored their furniture in Northridge. Petitioner was employed by Hughes Aerospace Co. at its Culver City facility and was being transferred to the Hughes facility in Canoga Park. Northridge is 9 miles from Canoga Park. From June 30 to November 22, petitioner sought other employment using a Culver City post office box as petitioners had no established residence during *82 that period. He was employed by TRW Systems on November 13, 1967 at its Redondo Beach facility and purchased a residence in El Segundo. The El Segundo residence is 7 miles from the TRW facility and 36 miles from Northridge. The last motel occupied by petitioners prior to moving to their residence at El Segundo was located 22 miles from Canoga Park and 15 miles from TRW. The deduction claimed was for the move of petitioners' household goods from Sherman Oaks to Northridge. Petitioner was reimbursed by TRW for moving household goods from Northridge to El Segundo. Section 217 of the Code provides for the deduction of moving expenses. Respondent contends that petitioner did not satisfy the minimum distance requirement of section 217(c) of the Code. The deduction is not allowable unless the distance between the taxpayer's new principal place of work and his former residence exceeds by at least 20 miles the distance between his former principal place of work and such former residence. Sec. 1.217-1(c) (2) (i), Income Tax Regs. Petitioners contend that Northridge was their "former residence." Petitioners never lived in Northridge. They stored their household goods in Northridge *83 when they moved out of their residence in Sherman Oaks. The term "former residence" refers to the taxpayer's principal residence before his departure for his new principal place of work and does not include seasonal residences. Sec. 1.217-2(b) (8). When petitioners moved from their residence in Sherman Oaks it was because petitioner was going to work in Canoga Park. The "former residence" as that term is used in the regulations, is Sherman Oaks. It cannot be Northridge because petitioners never resided there. Applying the facts to section 1.217-1(c) (2) (i), Income Tax Regs., therefore, the distance from Redondo Beach to Sherman Oaks must be more than 20 miles farther than the distance from Sherman Oaks to Canoga Park. The distance from Sherman Oaks to Canoga Park is 9 miles. Petitioner put on no proof as to the distance from Sherman Oaks to Redondo Beach but we take judicial notice of the distance from a map using the most direct freeway route and find the distance to be approximately 23 miles. In order for petitioners to prevail, the distance would have to be more than 29 miles. We conclude that petitioners failed to establish that they come within the distance requirement *84 of section 217(c) of the Code and the Commissioner's disallowance of the deduction is sustained. Decision will be entered under Rule 155. Footnotes
1. All Code section references are to the Internal Revenue Code of 1954, as amended in effect for the calendar year 1968. ↩