Floyd Eugene **SWARTZ**, Jr., **Appellant**,

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 88-2757.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1989.

Decided June 2, 1989.

futures contracts bought and sold by taxpayer Floyd E. Swartz, Jr. constituted capital assets under section 1221 of the Internal Revenue Code.[1] The Tax Court[2] held that losses stemming from these contracts were capital losses, which could not be deducted from ordinary income to eliminate tax liability. We affirm.

From December 1980 to December 1983, Swartz worked full-time trading commodity futures contracts. He made his transactions through brokerage houses, and had no direct contacts with other buyers and sellers. Swartz did not deal in any commodities; rather, he traded each contract for an offsetting contract. To profit in this undertaking, Swartz needed to predict fluctuations in the price of gold and silver and trade accordingly.

Swartz incurred trading losses of $45,917 in 1981, $25,843 in 1982, and $19,400 in 1983. Deducting his 1983 and 1982 trading losses as ordinary business losses on his federal income tax returns, Swartz carried the resulting net operating losses back to reduce his taxes for the 1979 and 1980 tax years. He received refunds of his taxes paid during those years.

Floyd Eugene Swartz, appellant pro se.

William S. Rose, Jr., Gary R. Allen, Kenneth L. Green, and Curtis C. Pett, Washington, D.C., for appellee.

Before ARNOLD, BOWMAN and MAGILL, Circuit Judges.

The Commissioner of the Internal Revenue Service determined that the losses Swartz had incurred were capital losses (which could not be used to offset ordinary income), and assessed deficiencies for 1979, 1980, and 1982. Swartz petitioned the Tax Court for a redetermination of his taxes.

PER CURIAM.

The dispositive issue in this case is whether certain gold and silver commodity

Section 1221 excepts from the definition of capital assets "property held by the taxpayer for sale to customers in the ordinary course of his trade or business." Swartz

1. All references to statutory provisions are to the Internal Revenue Code of 1954, as amended and in effect at the time of these transactions.

2. The Honorable William M. Fay, presiding.

relied on the section, arguing that futures contracts are not capital assets. The Tax Court rejected this argument, holding that even if Swartz were in the business of trading in commodities, he had no "customers" within the meaning of section 1221. Therefore, the court reasoned, Swartz' contracts were capital assets.

■ In this appeal, Swartz contends that, under *Commissioner v. Groetzinger*, 480 U.S. 23, 35–36, 107 S.Ct. 980, 987–988, 94 L.Ed.2d 25 (1987) (gambling activity pursued full-time in good faith and with regularity is a trade or business within the meaning of 26 U.S.C. § 162(a)), he was in the trade or business of exchanging commodity futures. We agree with the Tax Court that this point is not material. Under section 165(f), losses from the sale or exchange of capital assets are allowed only to the limited extent provided in sections 1211 and 1212. Swartz did not apply his 1982 and 1983 losses in accordance with these sections. Therefore, the important question is whether the commodity futures contracts were capital assets.

Section 1221(1) provides:

> For the purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

> (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business[.]

■ Although he had no customers, Swartz argues that commodity futures contracts were his stock in trade, property that he included in inventory at the end of each taxable year. Swartz' argument based on this characterization is without merit. Commodity futures contracts are capital assets in the hands of a trader. *King v. Commissioner*, 89 T.C. 445, 457–58 (1987); *see also Van Suetendael v. Commissioner*, 152 F.2d 654 (2d Cir.1945) (per curiam) (securities "could not be classified as stock in trade or property subject to inventory unless they were held by the taxpayer primarily for sale to customers"); *Mirro–Dynamics Corp. v. United States*, 247 F.Supp. 214, 217 (S.D.Cal.1965) (securities bought and sold solely for taxpayer's account may not be considered business inventory), *aff'd*, 374 F.2d 14, 16 (9th Cir.), *cert. denied*, 389 U.S. 896, 88 S.Ct. 215, 19 L.Ed.2d 214 (1967).

In light of the Supreme Court's decision in *Arkansas Best Corp. v. Commissioner*, 485 U.S. 212, 108 S.Ct. 971, 99 L.Ed.2d 183 (1988), Swartz' reliance on *Corn Products Refining Co. v. Commissioner*, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955), is misplaced. Because the commodity futures contracts fall within the section 1221 definition of capital assets, the gains and losses flowing from the contracts must be treated as capital gains and losses, regardless of Swartz' asserted "business" motive in acquiring them. *See Arkansas Best Corp.*, 485 U.S. 212, 108 S.Ct. at 974, 978, 99 L.Ed.2d 183 (1988).

Accordingly, the judgment of the Tax Court is affirmed.