PACIFIC SECURITIES, JOHN WERTIN, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pacific Sec. v. Commissioner
Docket No. 3806-89
United States Tax Court
T.C. Memo 1992-90; 1992 Tax Ct. Memo LEXIS 95; 63 T.C.M. (CCH) 2060; T.C.M. (RIA) 92090; February 12, 1992, Filed *95 Decision will be entered for respondent. Louis A. Huskins, for petitioner. Mary Tseng and Carl Inskeep, for respondent. WELLS
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: The instant case is a proceeding under section 6226 for a readjustment of partnership items of Pacific Securities (the partnership) for the taxable year ending December 31, 1983. Respondent issued a Notice of Final Partnership Administrative Adjustments in which he (1) disallowed an ordinary loss of $ 1,037,520 arising from the write-down under section 1.471-5, Income Tax Regs., of securities held by the partnership, and (2) allowed a deduction for the payment of a dividend expense of $ 467,500 on borrowed stock under section 212, rather than under section 162, as claimed on the partnership's information return. The issues to be decided are (1) Whether the partnership is a dealer in securities it held in 1983 as required by sec. 1-471-5, Income Tax Regs., as a requisite to the write-down of securities held by petitioner; and (2) whether the dividend paid on stock the partnership borrowed to cover a short sale it made in such stock is deductible under section 212, as determined *96 by respondent, or under section 162, as claimed by petitioner. Unless otherwise noted, all section references are to the Internal Revenue Code as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts and certain documents have been stipulated for trial pursuant to Rule 91. The stipulations of fact are incorporated herein by reference irrespective of any restatement below. At the time the petition in the instant case was filed, the partnership had been dissolved or terminated, and John Wertin, the tax matters partner (hereinafter referred to in such capacity as petitioner and in his individual capacity as Mr. Wertin), resided in Corona Del Mar, California. The partnership was a California general partnership formed on October 28, 1983, between Christina Securities, Inc. (Christina) and Mr. Wertin. Christina is licensed by the Securities and Exchange Commission (SEC) as a broker-dealer of securities and is a member of the National Association of Securities Dealers (NASD). Christina holds a seat on the Pacific Stock Exchange and engaged in the business of executing trades for approximately *97 200 regular account customers. Christina maintained an office in San Clemente, California, and had four employees during 1983. Christina regularly advertised in local publications during 1983. Mr. Wertin owned all the stock of Christina, which elected on July 1, 1983, to be treated as an S corporation beginning in the taxable year ending December 31, 1983. In addition to his interests in the partnership and Christina, Mr. Wertin was engaged, through corporations and partnerships which he controlled, in several businesses, including real estate development and the acquisition of securities in publicly traded companies. Prior to and during 1983, Mr. Wertin was not a broker/dealer registered with the SEC or the NASD. On December 23, 1983, the partnership agreement was amended and a new partner, TNPC, Inc. (TNPC) was admitted to the partnership. TNPC was a holding company with ownership of entities engaged in real estate ownership and development, as well as diversified financial services. TNPC also from time to time acquired controlling interests in certain publicly traded securities. TNPC was wholly owned by Mr. Wertin and, on July 1, 1983, made an election to be treated as *98 an S corporation, effective for the taxable year ending December 31, 1983. Under the amended partnership agreement, the partnership was to act as "a market-maker, trading specialist and dealer in publicly-traded securities." The partnership, however, was never registered or licensed with the SEC, NASD, California Corporations Commissioner, or any other self-regulating securities organization. The partnership did not have any employees, salesmen, or customer accounts. The partnership itself did not sell any securities as a broker/dealer. The partnership's business address was the same as Christina's. The partners made various contributions of property to the partnership during 1983. Mr. Wertin and Christina contributed a total of $ 425,000 in cash to the partnership, and each made interest bearing demand loans of $ 230,000. Mr. Wertin and Christina also agreed to make further demand loans of $ 370,000 and $ 170,000 when and as required by the partnership. On December 23, 1983, TNPC contributed to the partnership 200,000 shares of American Pacific Corporation (AMPAC), a public company whose securities were listed on the Pacific Stock Exchange and were traded over the counter *99 in the National Quotation Bureau's Pink Sheets. The partnership adopted TNPC's cost basis of $ 2,374,750 in the AMPAC stock contributed to it. Christina held the partnership's AMPAC stock. As of December 31, 1983, Mr. Wertin owned 29.65 percent of all outstanding AMPAC stock, TNPC held 14.26 percent, Christina held .32 percent, and the partnership held 3.25 percent. During 1983, prior to and following the formation of the partnership, Mr. Wertin consulted with his legal and accounting advisers regarding the involvement of the partnership as a market maker or dealer in the shares of AMPAC and other selected securities. During 1983, however, the partnership did not advertise itself as a broker or dealer in securities or hold itself out as having AMPAC stock on hand for sale to customers. During 1983, neither Christina nor the partnership advertised or published any bid or asked prices for AMPAC stock in the National Quotation Bureau's Pink Sheets or in any other publication advertising securities. During 1983, the partnership engaged in four securities transactions. The purchases and sales were conducted through Christina, with the assistance of another broker/dealer, Oppenheimer *100 & Co., the partnership's trading activity centered on one stock, Chrysler Corporation $ 2.75 preferred (Chrysler $ 2.75 PFD), which was traded on the New York Stock Exchange (NYSE). On October 28, 1983, the partnership sold short 40,000 shares of Chrysler $ 2.75 PFD for $ 1,434,952. On December 22, 1983, the partnership paid an expense of $ 467,500 relating to dividends on the Chrysler $ 2.75 PFD borrowed to cover the short sale. On November 1, 1983, the partnership paid $ 255,000 for 400 call options, each for 100 shares of Chrysler $ 2.75 PFD, with a strike price of $ 31 per share and an expiration date of January 4, 1984. On December 28, 1983, the partnership purchased 10,000 shares of Chrysler $ 2.75 PFD for $ 222,500. The partnership made only one other trade in 1983. On November 1, 1983, the partnership purchased for $ 629,688 United States Treasury Notes SER A-90, due August 15, 1990, in the principal amount of $ 650,000. Such Treasury notes were publicly traded. The partnership had no significant activities in 1984, and it was terminated or dissolved in 1984 or 1985. The partnership valued its securities at market value, marking such securities to market as of December *101 31, 1983, under section 1.471-5, Income Tax Regs. The partnership claimed the following gains and losses resulting from such treatment: The partnership wrote down its 200,000 shares of AMPAC to $ 937,500, based on the $ 4.6875 per share value of such stock on December 30, 1983, claiming a loss of $ 1,437,250 as a result of write-down. The partnership wrote down the value of its short position in 40,000 shares of Chrysler $ 2.75 PFD to $ 772,500, claiming a gain of $ 662,452, based on the stock's closing share price of $ 22 7/8 on December 30, 1983. The partnership wrote down the value of its Chrysler $ 2.75 PFD call options to $ 0, claiming a loss of $ 255,000. The partnership wrote down the value of its Treasury Notes to $ 621,966, claiming a loss of $ 7,722. OPINION The first question we must decide is whether the partnership was a dealer in the securities it held in 1983. Petitioner has the burden of proof. Rule 142(a). The question of whether the partnership was a dealer, trader, or investor is to be resolved at the partnership level. Brannen v. Commissioner, 78 T.C. 471, 502-504 (1982), affd. 722 F.2d 695 (11th Cir. 1984). The issue *102 of whether a taxpayer is a dealer and whether its holdings of securities constitute inventory is a question of fact. Kemon v. Commissioner, 16 T.C. 1026, 1032 (1951); Stern Brothers & Co. v. Commissioner, 16 T.C. 295, 313 (1951). See also United States v. Chinook Inv. Co., 136 F.2d 984 (9th Cir. 1943). A mere subjective desire on the part of a taxpayer to regard itself as a dealer and to hold certain securities as inventory is not sufficient. Lauderdale v. Commissioner, 9 T.C. 751, 756 (1947). Furthermore, a taxpayer's book entries do not control the question of whether securities it holds are inventory. Stephens, Inc. v. United States, 464 F.2d 53, 61 (8th Cir. 1972). Rather, a taxpayer's professions of intent must be supported by conduct which is clearly consistent with such intent. Stern Brothers & Co. v. Commissioner, 16 T.C. 295, 313 (1951). A taxpayer may hold some securities as inventory while simultaneously holding similar securities for some other purpose than sale to customers. Stern Brothers & Co. v. Commissioner, 16 T.C. at 313. *103 The taxpayer's holding purpose is to be ascertained from all circumstances surrounding each security. Id. A taxpayer must be a dealer in securities before it is entitled to mark its holdings to market and recognize gains and losses without selling or otherwise disposing of them. Sec. 1.471-5, Income Tax Regs. The regulations define a dealer in the following terms: For the purposes of this section, a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived therefrom. If such business is simply a branch of the activities carried on by such person, the securities inventoried as provided in this section may include only those held for purposes of resale and not for investment. Taxpayers who buy and sell or hold securities for investment or speculation, irrespective of whether such buying or selling constitutes the carrying on of a trade or business, and officers of corporations and *104 members of partnerships who in their individual capacities buy and sell securities, are not dealers in securities within the meaning of this section. * * * [Sec. 1.471-5, Income Tax Regs.]
Applying the requirements of the foregoing regulation, we conclude that petitioner has not satisfied his burden of proving that the partnership was a dealer with respect to its securities holdings in 1983. While the partnership may have had a place of business at Christina's offices, we cannot say that it was "regularly engaged in the purchase of securities and their resale to customers". Sec. 1.471-5, Income Tax Regs. The record shows that the partnership engaged in only four trades during 1983. Infrequent and isolated transactions in securities have long been held insufficient to constitute a taxpayer as a dealer in securities. Pan-American Bank & Trust Co. v. Commissioner, 5 B.T.A. 839, 845 (1926). See also Adam v. Commissioner, 60 T.C. 996, 1001 (1973) ("intermittent" and "occasional" transactions insufficient to constitute a business). Moreover, it does not appear that the partnership functioned as a merchant with respect to the securities *105 it held during 1983, as required by the regulation. A "merchant" expects to earn a profit by dealing with persons willing to compensate it for services rendered as a middleman bringing together buyer and seller, and for performing other services customary for a wholesaler or retailer of goods. Kemon v. Commissioner, 16 T.C. 1023, 1032-1033 (1951). Another indication that a taxpayer is a dealer is the possession of a source of supply different from that available to those with whom the taxpayer deals. Kemon v. Commissioner, 16 T.C. at 1033. [1]
In the instant case, the partnership's activity does not resemble that of a merchant. It was not registered or licensed as a broker/dealer with any regulatory agency, it had no employees, salesmen, or customer accounts, and it did not advertise or hold itself out as having securities for sale. Instead of acting as a middleman, it relied on another middleman, Oppenheimer & Co., to *106 effect its purchases and sales of securities. The partnership's source of supply for the securities it purchased was no different from that available to any person to whom it might sell. Furthermore, based on such manner of trading, the partnership had no customers with respect to its purchases and sales in 1983. King v. Commissioner, 89 T.C. 445, 457-458 (1987) (quoting Wood v. Commissioner, 16 T.C. 213, 219-220 (1951)). In fact, it appears that the partnership was the customer of Oppenheimer & Co. [2] The partnership's transactions were solely for its own account. Accordingly, we conclude that the partnership was not a dealer with respect to the Chrysler $ 2.75 PFD stock and options or the Treasury Notes it held in 1983. Mirro-Dynamics Corp. v. United States, 374 F.2d 14, 16 (9th Cir. 1967). *107 Petitioner also claims that the partnership was a dealer with respect to the AMPAC stock held by it during 1983. However, the evidence does not suggest that such was the case. The partnership did not buy or sell any AMPAC stock during 1983, and only received such stock from TNPC on December 23, 1983, eight days before the end of its taxable year. The partnership did not advertise or hold itself out as having AMPAC stock for sale, nor did it or Christina quote bid or asked prices for such stock in the National Quotations Bureau's Pink Sheets. Accordingly, we are not convinced that the partnership "regularly engaged in the purchase of" AMPAC stock and its "resale to customers", as required by the regulations. Sec. 1.471-5, Income Tax Regs.
Mr. Wertin did consult with his legal and accounting advisers during 1983 concerning the partnership's involvement in the purchase and sale of AMPAC stock and other securities. Mr. Wertin also testified that he contacted other active traders to inform them of the partnership's willingness to buy and sell AMPAC stock. However, such activities seem as consistent with that of an investor trading in his own account as they are with the carrying *108 on of a trade or business. Consequently, based on our consideration of the entire record in the instant case, we conclude that petitioner has failed to carry his burden of showing that the partnership was a dealer entitled to inventory its securities under section 1.471-5, Income Tax Regs.
We must also decide whether the partnership is entitled to a deduction under section 162 for a dividend expense of $ 467,500 it claimed in its 1983 return in connection with the 40,000 shares of Chrysler $ 2.75 PFD it had borrowed to cover its short sale of such stock. Respondent determined that such deduction should be allowed under section 212, rather than section 162, as the partnership was not engaged in a trade or business. After due consideration, we agree with respondent. Although a taxpayer may not be a dealer in securities, he nevertheless may be engaged in the business of trading in securities for his own account. King v. Commissioner, 89 T.C. 445, 457-458 (1987). If a trader's transactions are frequent and substantial, he will be deemed to be engaged in a business. King v. Commissioner, 89 T.C. at 458. [3] As one court has put it, the term *109 "business" means "busyness; it implies that one is kept more or less busy, that the activity is an occupation." Snell v. Commissioner, 97 F.2d 891, 892 (5th Cir. 1938), affg. a Memorandum Opinion of this Court dated October 5, 1936. Furthermore, the Supreme Court has adopted a similar definition, ruling that, in order to be a business, an activity must be pursued with continuity and regularity, and that a sporadic activity does not qualify as a business. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). With the foregoing standards in mind, we hold that petitioner has failed to carry his burden of proving that the partnership was engaged in a business during 1983. The partnership engaged in only four securities trades during such year, three of which centered on a short sale of the shares of Chrysler $ 2.75 PFD. Such a minimal level of activity does *110 not rise to the level of a business, but rather should be characterized as a sporadic activity, due to the occasional nature of the transactions. Consequently, we hold that respondent correctly allowed the deduction under section 212, rather than section 162. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Nehring v. CommissionerT.C. Memo. 1957-51↩.
2. Frankel v. Commissioner, T.C. Memo. 1989-39; Swartz v. Commissioner, T.C. Memo. 1987-582, affd. 876 F.2d 657↩ (8th Cir. 1989).
3. Michelson v. Commissioner, T.C. Memo. 1990-27, affd. 951 F.2d 288↩ (10th Cir. 1991).