STEVEN R. MYERS AND JULIE L. MYERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Myers v. Commissioner
Docket No. 27697-91
United States Tax Court
T.C. Memo 1994-529; 1994 Tax Ct. Memo LEXIS 537; 68 T.C.M. (CCH) 1004; October 20, 1994, Filed *537 Decision will be entered for respondent. For petitioners: Thomas L. Bright. For respondent: Edith F. Moates. BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: On November 26, 1990, petitioners signed Form 870, consenting to the immediate assessment and collection of deficiencies in their 1987, 1988, and 1989 Federal income tax. Petitioners promptly paid the deficiencies shown on the Form 870. On August 27, 1991, respondent determined the following additional deficiency in and additions to petitioners' Federal income tax: Additions to tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6661
Sec. 6662(a)
1987
$ 406
[1] $ 1,020
$ 5,102
--
1988
--
1,246
6,229
--
1989
--
--
--
$ 897
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Petitioners deducted losses from options and future contracts (commodity contract losses) on their 1987 Form 1040 Schedule C and 1988 Form 1040 Schedule F. Respondent determined that those contracts were capital assets and that the losses *538 from their disposal or termination were capital losses subject to capital loss limitations. Petitioners have agreed to respondent's determination of all deficiencies. The remaining issues are: (1) Whether petitioners had substantial authority for, or adequately disclosed, their treatment of commodity contract losses for 1987, 1988, and 1989; and (2) whether petitioners' underpayments for 1987 and 1988 were attributable to negligence or intentional disregard of rules and regulations. We find that petitioners did not have substantial authority for, nor did they adequately disclose, their treatment of commodity contract losses. We also find that petitioners' underpayments were attributable to negligence. FINDINGS OF FACT When petitioners filed the petition in this case, they resided in Coffeyville, Kansas. During the years in issue, Mr. Myers (petitioner) was a commodities broker. He was licensed as an "associated person" and worked for, and was paid by, petitioners' wholly owned corporation Commodity Sense, Inc. As an associated person, petitioner made trades for himself and his clients in options and futures contracts (commodity contracts) through an "introducing broker". *539 Commodity Sense was an introducing broker, through which petitioner's and his clients' trades were passed on to a "futures clearing merchant". The futures clearing merchant owned a seat on the Board of Trade, where it effected the trades. Neither petitioner nor Common Sense was a dealer in commodity contracts. Petitioners' 1987 Form 1040, Schedule C, Profit or (Loss) From Business or Profession (Sole Proprietorship) showed $ 125,000 of gross receipts, which was petitioner's income from Commodity Sense. On that same Schedule C, petitioners deducted $ 94,409 of net commodity contract losses that petitioner had incurred through trades in his personal accounts described as "CLAYTON ACCT 1,406" and "SHATKIN ACCT 94,003". Line A of the 1987 Schedule C was left blank, and it is therefore not apparent from the 1987 Schedule C what type of business or profession was being reported thereon. No other schedule or attachment discloses the potentially controversial treatment of the commodity contract losses. Petitioners' 1988 Form 1040, Schedule F, Farm Income and Expenses, showed $ 4,416 of gross income from sales of livestock, produce, grains, and other products. On that same Schedule *540 F, petitioners deducted $ 71,703 of commodity contract losses that petitioner had incurred through trades in his personal account, describing those losses as "HEDGING ACCT". No other schedules or attachments disclose the potentially controversial treatment of the commodity contract losses on Schedule F, although the 1988 Schedule C does show that the principal business is "COMMODITIES". The 1988 Schedule C also shows $ 74,104 of gross receipts. Petitioners' 1989 Form 1040, Schedule C showed $ 101,506 of gross receipts from petitioner's "COMMODITIES" business although no commodity contract losses were shown anywhere on the 1989 Form 1040. During the years in issue, petitioners were not grain farmers, did not own any material amount of grain, and owned only a "minimal number" of cattle. For 1987, petitioners did not report any income from sales of livestock, produce, grain, or other products that they raised. For 1989, petitioners reported only $ 839 of gross income from sales of livestock, produce, grain, and other products that they raised. OPINION Additions to Tax for Substantial Understatement
Section 6661(a), as in effect for 1987 and 1988, imposes an addition to *541 tax equal to 25 percent of the underpayment attributable to the understatement of tax for the year. Pallottini v. Commissioner, 90 T.C. 498, 503 (1988). Section 6662(a), as in effect for 1989, imposes a penalty equal to 20 percent of the underpayment attributable to the understatement of tax for the year. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown or $ 5,000. Secs. 6661(b)(1)(A) and 6662(d)(1)(A). The Commissioner's determinations with respect to substantial understatements are presumed to be correct, and the taxpayer has the burden of proving that those determinations are erroneous. An "understatement" is defined as the excess of the tax required to be shown on the return over the tax actually shown thereon, secs. 6661(b)(2)(A) and 6662(d)(2)(A), but an understatement will generally be reduced if the taxpayer either had substantial authority for, or adequately disclosed the relevant facts affecting, the tax treatment on the return, secs. 6661(b)(2)(B) and 6662(d)(2)(B). We decide whether a taxpayer had substantial authority by using the same analysis and the same precedents that we *542 would use in deciding whether the taxpayer's treatment of the item was proper. Antonides v. Commissioner, 91 T.C. 686, 702 (1988), affd. 893 F.2d 656 (4th Cir. 1990). However, we consider the authorities at the time the return was filed, or at the end of the taxable year in question, even if those authorities are ultimately held inapplicable. Collins v. Commissioner, T.C. Memo. 1992-478, affd. 3 F.3d 625 (2d Cir. 1993); Harston v. Commissioner, T.C. Memo. 1990-538, affd. without published opinion 936 F.2d 570 (5th Cir. 1991). Substantial authority is an objective standard, less difficult to satisfy than "more likely than not", but more difficult to satisfy than "reasonable basis". Antonides v. Commissioner, supra at 702; secs. 1.6661-3(a)(2) and (b)(1), 1.6662-4(d)(2), Income Tax Regs. The weight of authorities supporting a taxpayer's treatment of an item must be substantial in relation to the weight of the authorities supporting contrary positions, and an authority is *543 given little weight if it is materially distinguishable on its facts. Secs. 1.6661-3(b)(1), (3), 1.6662-4(d)(3), Income Tax Regs.
For 1987, 1988, and 1989, petitioners assert that they had substantial authority for their deduction of the commodity contract losses as trade or business expenses [1] under the Supreme Court's holding in Commissioner v. Groetzinger, 480 U.S. 23 (1987), because the rationale of Arkansas Best Corp. v. Commissioner, 485 U.S. 212 (1988), had not yet been "diffused" through the tax community or "extended" to situations like petitioners'. We disagree. Petitioners assert *544 that, because Commissioner v. Groetzinger, supra, held that a taxpayer could be engaged in a trade or business even though he did not have any customers, there was a possibility that a taxpayer could deduct losses on commodity contracts as ordinary and necessary expenses under section 162. Petitioners appear to have confused the requirement that a taxpayer have a trade or business in order to deduct ordinary and necessary expenses under section 162 with the requirement that the holder of property have customers in order to be exempt from the capital loss limitations of section 1211. Groetzinger classified the gambling losses of a full-time gambler, who did not have any customers, as trade or business expenses deductible under section 162 and not as miscellaneous itemized deductions subject to adjustment when determining alternative minimum taxable income. The facts and legal issue of Groetzinger are materially different from those of this case. See Swartz v. Commissioner, 876 F.2d 657, 659 (8th Cir. 1989), affg. T.C. Memo. 1987-582; United States v. Diamond, 788 F.2d 1025, 1028-1029 (4th Cir. 1986). *545 Groetzinger dealt with defining "trade or business". It did not authorize recharacterization of capital assets as noncapital assets, and it did not overturn the long line of cases distinguishing between dealers, whose securities are inventory, and traders, to whom securities are capital assets. See Reinach v. Commissioner, 373 F.2d 900 (2d Cir. 1967), affg. T.C. Memo. 1965-288; Vickers v. Commissioner, 80 T.C. 394, 405 (1983); Smith v. Commissioner, 33 T.C. 465, 482 (1959), affd. in part, revd. in part and remanded 312 F.2d 724 (8th Cir. 1963); Polachek v. Commissioner, 22 T.C. 858, 862 (1954); Kemon v. Commissioner, 16 T.C. 1026 (1951) (applying sec. 117(b), I.R.C. 1939); Burnett v. Commissioner, 40 B.T.A. 605 (1939) (applying sec. 117(b), I.R.C. 1939), affd. in part and revd. in part on other issues 118 F.2d 659 (5th Cir. 1941). Whether petitioner was in the trade or business of acting as a trader of commodity *546 contracts is irrelevant to the character of the gains and losses from the sale of those contracts. See Swartz v. Commissioner, supra at 659; King v. Commissioner, 89 T.C. 445, 460 (1987). A loss from the sale of an asset is a capital loss, subject to the limitations of sections 1211 and 1212, unless the asset was not a "capital asset" when held by the taxpayer. "Capital asset" means property held by the taxpayer (whether or not connected with a trade or business) unless specifically excluded by section 1221(1)-(5). Securities, such as commodity contracts, are capital assets unless they are "held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business". Sec. 1221(1); Smith v. Commissioner, supra at 482-483; Three G Trading Corp. v. Commissioner, T.C. Memo. 1988-131. Petitioner was, at best, a trader who was in the trade or business of managing his investment portfolio. He was not a dealer holding the commodity contracts for sale to customers; when he held the commodity contracts, they were capital assets, *547 subject to the loss limitations of sections 1211 and 1212. Sec. 1221(1). There was no reasonable basis to think that the holding in Groetzinger expanded the scope of the section 1221(1) exemption by deleting the statutory requirement that property be held for sale to customers. Accordingly, Commissioner v. Groetzinger, supra, is not authority, substantial or otherwise, for petitioners' treatment of the commodity contract losses as trade or business expenses rather than as capital losses. Petitioners advance an argument, supposedly grounded in "modern communications theory", that when they filed their returns, the rationale of Arkansas Best Corp. v. Commissioner, supra, had not "diffused" throughout the tax community and had not been "extended" to petitioners' situation, and that, therefore, petitioners had a reasonable basis for their treatment of the commodity contract losses on those returns. Laying to one side the objection that petitioners provided no evidence, expert testimony, or references for judicial notice with regard to "modern communications theory", we have rejected petitioners' assertion that *548 Groetzinger raised a question that required an understanding of Arkansas Best to answer. Because there was no support for petitioners' treatment of the commodity contract losses before the Supreme Court decided Arkansas Best, the time needed for its rationale to "diffuse" through the tax community and to be "extended" to petitioners' situation is irrelevant. Petitioners had no plausible support, before or after the Supreme Court decided Arkansas Best, for their treatment of the commodity contract losses. For 1987, petitioners concede that they did not disclose their treatment of the commodity contract losses, but for 1988 and 1989, petitioners assert that their description of the principal business activity on their 1988 and 1989 Forms 1040, Schedule C, as "COMMODITIES" was adequate disclosure of their treatment of the commodity contract losses. Again, we disagree. For 1988, petitioners did not attach any disclosure statement to their return, sec. 1.6661-4(b), Income Tax Regs., and they did not provide anywhere near enough information for respondent to identify the potential controversy on their return, Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). *549 Even if "COMMODITIES" was adequate disclosure for deductions on Schedule C, the commodity contract losses were deducted on Schedule F, which is completely unrelated to petitioners' "disclosure" on Schedule C. For 1989, none of petitioners' underpayment is attributable to the commodity contracts losses. Although petitioners assert, in their petition and on brief, that respondent disallowed commodity contract losses for 1989, petitioners did not claim any commodity contract losses for 1989, so any disclosure of "COMMODITIES" for 1989 is irrelevant. Petitioners presented no evidence that their 1989 underpayment was attributable to treatment of any other item that was supported by substantial authority or that was adequately disclosed. We sustain respondent's determination of the penalty under section 6662(a) for 1989. For 1987 and 1988, petitioners did not have substantial authority for, and did not adequately disclose, their treatment of the commodity contract losses. However, the Secretary could have waived all or any part of the section 6661(a) additions to tax if petitioners had shown that there was reasonable cause for their understatements and that they acted in good faith. *550 Sec. 6661(c). Petitioners must prove that the Secretary abused his discretion by denying the waiver of the section 6661(a) additions to tax. Mailman v. Commissioner, 91 T.C. 1079, 1083 (1988). To meet this burden petitioners generally must show (i) that they requested a waiver under section 6661(c), Klieger v. Commissioner, T.C. Memo. 1992-734, (ii) that the waiver request was refused, id., and (iii) that reasonable cause and good faith are so clear that the refusal was arbitrary, capricious, or without sound basis in fact, Mailman v. Commissioner, supra at 1084. Inasmuch as petitioners provided no evidence that they had requested a waiver, respondent had no occasion to deny their request, but, in any event, petitioners did not have reasonable cause for their understatements. See Vandeyacht v. Commissioner, T.C. Memo. 1994-148. We therefore sustain respondent's determinations of additions to tax under section 6661(a) for 1987 and 1988. Additions to Tax for Negligence
For 1987 and 1988, respondent determined additions to tax under section *551 6653(a). Section 6653(a) imposes an addition to tax equal to 5 percent of the underpayment if any part of an underpayment is due to negligence or intentional disregard of rules and regulations. Negligence is the failure to exercise due care or the failure to act like a reasonable and prudent person. Niedringhaus v. Commissioner, 99 T.C. 202, 221 (1992). If a taxpayer can show a reasonable basis for the treatment of an item (a less difficult standard to satisfy than substantial authority), the taxpayer will have carried the burden of proving that respondent's determination of negligence with respect to that item was erroneous. Antonides v. Commissioner, 91 T.C. at 702; sec. 1.6661-3(a)(2), Income Tax Regs.
Petitioners rely solely on their asserted authority for and disclosure of their treatment of commodity losses to challenge respondent's determination of additions to tax for negligence under section 6653(a). Although substantial authority or adequate disclosure may negate respondent's determination of negligence, Collins v. Commissioner, T.C. Memo. 1992-478; Cryder v. Commissioner, T.C. Memo. 1977-103, *552 petitioners had no authority for their ordinary-deduction treatment of the commodity contract losses, and they did not sufficiently disclose the grounds for that treatment. Inasmuch as petitioners had no authority for their treatment of commodity contract losses, did not adequately disclose those losses, and did not otherwise prove respondent's determination of negligence to be erroneous, we sustain respondent's determination under section 6653(a) for 1987 and 1988. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Plus 50 percent of the interest due on the underpayment.↩
1. Petitioners do not assert, and would have no basis to assert, that their 1988 commodity contract losses were hedging losses incurred as part of their farming activity. In so concluding, we deny all plausibility to any argument to the contrary that may be based on the fact that petitioners showed those losses on Schedule F as being attributable to "HEDGING ACCT".↩