**AZAR NUT COMPANY,**
**Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL**
**REVENUE, Respondent–Appellee.**

**No. 90–4462.**

United States Court of Appeals,
Fifth Circuit.

May 15, 1991.

---

Karin A. Brandys, Alejandro Acosta, Hector Delgado, Ginnings, Birkelbach, Keith & Delgado, El Paso, Tex., for petitioner-appellant.

Joan I. Oppenheimer, Gary R. Allen, Chief, Appellate Sec. Tax Div., Dept. of Justice, Gilbert S. Rothenberg, Shirley D. Peterson, Asst. Atty. Gen., Abraham N.M. Shashy, Jr., Chief Counsel, I.R.S., Washington, D.C., for respondent-appellee.

Before WISDOM, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Azar Nut Company ("Azar") incurred a loss when it sold a house purchased from an employee pursuant to an employment contract. The Tax Court rejected Azar's attempt to deduct the loss as an ordinary loss under I.R.C. § 165 or as an ordinary and necessary business expense under I.R.C. § 162. We affirm.

I.

Azar is in the business of processing, packaging, and marketing nuts in El Paso, Texas. As owners Edward and Phillip Azar approached retirement age, they decided to gradually lessen their management participation in Azar. After a nationwide search for a high level executive to succeed them, the Azars hired Thomas L. Frankovic as Executive Vice President and Chief Operating Officer.

During contract negotiations, Frankovic insisted that he would not accept employment with Azar unless Azar agreed to pur-

chase his El Paso residence for its fair market value upon termination of his employment. Although reluctant to meet Frankovic's demand, the Azar brothers were told by other corporate executives in their industry that they would not be able to hire a qualified high-level executive without first agreeing to purchase his residence at fair market value. Azar ultimately agreed to purchase Frankovic's El Paso residence for its fair market value upon termination of his employment, and incorporated that agreement into Frankovic's employment contract.[1]

After two years, Azar fired Frankovic and purchased his house for $285,000. Azar immediately listed the house, but did not sell it for almost two years. Azar realized approximately $185,000 on the sale and incurred a loss of $111,366.

Azar deducted $111,366 as an ordinary and necessary business expense on its 1984 tax return. The Commissioner disallowed the deduction and assessed a deficiency after recharacterizing the loss as a capital loss. Azar petitioned the United States Tax Court for a redetermination of the deficiency. The parties stipulated to the facts. The Tax Court held that Azar had incurred a capital loss, thus limiting Azar's deduction to the extent of Azar's capital gains. I.R.C. § 1211. Azar had no capital gains in 1984. Azar appeals.

## II.

Circuit courts review Tax Court decisions under the same standard used for civil actions decided by a federal district court. 26 U.S.C. § 7482(a). Because the parties stipulated to the facts of this case, we need not examine the Tax Court's factual findings. We may review the Tax Court's conclusions of law de novo. *Dresser Indus. v. Commissioner*, 911 F.2d 1128, 1132 (5th Cir. 1990).

## III.

■ Section 165(a) of the Internal Revenue Code allows taxpayers to deduct "any loss sustained during the taxable year and not compensated for by insurance or otherwise," unless the loss was incurred from the disposition of a capital asset. When a capital asset is incurred, corporate taxpayers may deduct the loss "only to the extent of [capital] gains." I.R.C. § 1211; see I.R.C. §§ 165(f), 1212. The deductibility of Azar's loss under § 165(a) depends, therefore, on whether the house was a capital asset or an ordinary asset.

Azar concedes that the house falls within the general statutory definition of "capital asset": "property held by the taxpayer (whether or not connected with his trade or business)." I.R.C. § 1221. But Azar urges this Court to exempt the house from capital asset treatment based on § 1221(2), which excepts from the definition of "capital asset" any property "used in [the taxpayer's] trade or business." Azar argues that this "used in" exception includes any asset acquired by a taxpayer under the terms of a contract or similar agreement that is an integral part of the taxpayer's business, even if the asset never plays a role in business operations after its acquisition.

Azar's interpretation of the "used in" exception essentially excludes from capital-asset treatment any asset purchased with a "business purpose," as that term was used under the *Corn Products* Doctrine. *See Corn Products Refining Co. v. Commissioner*, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955); *Campbell Taggart, Inc. v. United States*, 744 F.2d 442, 456–58 (5th Cir. 1984); see generally, Briggs and Classen, Arkansas Best: A Return to the Reasoning of Corn Products, 44 Wash. & Lee L.Rev. 1229 (1987). In *Corn Products,* a taxpayer

---

1. Frankovic's employment contract contained the following provision:

> In the event Frankovic's employment with Azar is terminated, Azar agrees to buy the house in El Paso purchased by Frankovic at the time he began his employment with Azar and agrees to pay the packing and moving expenses incurred by Frankovic in connection

> with his relocation to a state within the 48 contiguous states of the United States. In the event the parties cannot agree upon the value of such residence, each party shall select an MAI appraiser ... to make an appraisal of the residence. The average of the two appraisals shall be considered the value of the residence.

purchased corn futures on a commodities exchange to "hedge" against shortages and price increases in the raw corn market. The Court treated the corn futures as ordinary assets under § 1221(1), but did not state explicitly whether its holding was predicated on a broad reading of the inventory exception or on a narrow reading of the definition of a capital asset. This ambiguity in *Corn Products* and the apparent willingness of the Court to depart from the literal language of § 1221 allowed courts in subsequent decisions to create a general, nonstatutory exception from the definition of "capital asset" for all assets acquired with a business purpose beyond mere investment. *E.g., Campbell Taggart*, 744 F.2d at 456–58.

■ The Supreme Court recently renounced the *Corn Products* Doctrine in *Arkansas Best Corp. v. Commissioner*, 485 U.S. 212, 108 S.Ct. 971, 99 L.Ed.2d 183 (1988), holding that business purpose is irrelevant to determining whether an asset falls within the general definition of "capital asset." Azar urges us to consider business purpose in analyzing the "used in" exception. We conclude that the plain language of § 1221(2) precludes consideration of business purpose in all but the most exceptional circumstances.[2] The words "used in" clearly require ordinary asset treatment for properties that, once acquired, play a role in the taxpayer's business operations. Those words do not suggest that an asset may be excepted from capital-asset treatment simply because the asset is acquired with a business purpose. To qualify under the "used in" exception, an asset must be "used in" the taxpayer's business, and an asset that has no meaningful association with the taxpayer's business operations after it is acquired cannot reasonably fall within the plain words of the statute.

If we accepted Azar's argument that acquisition of an asset for a business purpose meets the "used in" exception, we would be returning to the *Corn Products* Doctrine. The Supreme Court abandoned the *Corn Products* Doctrine not only because it created a nonstatutory exception to the definition of "capital asset," but because it led to abuse of the tax laws. The Court in *Arkansas Best* expressed concern that the business-purpose doctrine allowed taxpayers to manipulate the tax laws, and those concerns adhere with equal force to this case:

> [I]f capital stock purchased and held for a business purpose is an ordinary asset, whereas the same stock purchased and held with an investment motive is a capital asset, a taxpayer such as Arkansas Best could have significant influence over whether the asset would receive capital or ordinary treatment. Because stock is most naturally viewed as a capital asset, the Internal Revenue Service would be hard pressed to challenge a taxpayer's claim that stock was acquired as an investment, and that a gain arising from the sale of such stock was therefore a capital gain.

485 U.S. at 222, 108 S.Ct. at 977.

Azar cites only one case—*A.L. Carter Co. v. Commissioner*, 143 F.2d 296 (5th Cir.1944)—in support of its proposed interpretation of the "used in" exception, and that case was decided before *Corn Products* and *Arkansas Best*. In *Carter* a taxpayer in the business of selling building materials and financing home construction foreclosed on several hundred houses during the depression years following 1929. The taxpayer did not deduct depreciation on its income tax returns during the years it held the houses. After reselling each home, the taxpayer computed its gain or loss using the cost basis (unadjusted to reflect depreciation). The Commissioner

---

**2.** The Tax Court has considered business purpose in deciding that a taxpayer who purchases an asset for use in the taxpayer's trade or business may be allowed ordinary-asset treatment under § 1221(2) if the asset was "devoted to" the trade or business, even if post-acquisition events have prevented the taxpayer from actually using the asset in the manner intended: *E.g. Alamo Broadcasting Co. v. Commissioner*, 15 T.C. 534, 541 (1950); *Carter–Colton Cigar Co. v. Commissioner*, 9 T.C. 219, 221 (1947). This Court has not yet decided a case with these special characteristics, and our disposition of this case neither forecloses nor mandates a decision in harmony with the Tax Court.

**318**

challenged the taxpayer's method, ruling that the houses were depreciable properties, regardless of whether the taxpayer actually claimed a depreciation deduction. Under I.R.C. § 23(*l*) (now I.R.C. § 167(a)), taxpayers could deduct a reasonable allowance for depreciation of property used in their trade or business. This Court held that the houses were "used in" the taxpayer's business because "[t]he management and administration of foreclosed property is an essential ingredient of the business of financing." *Id.* at 297. The key to this case was not the fact that the houses were *acquired* in the taxpayer's ordinary course of business, but rather that the houses were *used* to protect the taxpayer's capital.

We conclude, therefore, that § 1221(2) requires us to consider an asset's *post-acquisition* role in the taxpayer's business. The taxpayer's purpose for acquiring the asset and the method of acquisition are irrelevant to this inquiry. After it had been acquired, the house in this case played *no role* in Azar's business of processing, packaging, and marketing nuts. Although *Corn Products, Carter,* and other cases, *see, e.g., St. Louis Bank for Co-operatives v. United States,* 79–2 U.S. Tax Cas. (CCH) ¶ 9576 (Ct.Cl.1979), *aff'd in part and rev'd in part on other grounds,* 624 F.2d 1041, 1053, 224 Ct.Cl. 289 (1980), and *Deltide Fishing & Rental Tools, Inc. v. United States,* 279 F.Supp. 661, 665 (E.D.La.1968), suggest that an asset must play an "integral" role or be an "essential ingredient" in the taxpayer's business before it can qualify as an ordinary asset under the "used in" exception, we need not decide in this case how central a role an asset must play before the asset has been "used in" the taxpayer's business. No matter how tenuous the bond between the asset and the business, Azar's house cannot qualify.

### IV.

Azar contends in the alternative that the loss it incurred on the sale of the house is fully deductible under § 162(a). Section 162(a) of the Internal Revenue Code allows taxpayers to deduct "all the

ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Even if Azar's loss were "ordinary and necessary" and were "paid or incurred during the taxable year in carrying on any trade or business," the loss is not deductible under § 162(a) because it is not an "expense." Azar spent money to acquire a house. That expenditure "is capital by nature and not an expense." *Commissioner v. Lincoln Savings & Loan Assoc.,* 403 U.S. 345, 354, 91 S.Ct. 1893, 1899, 29 L.Ed.2d 519 (1971). We reject, therefore, Azar's claim for an ordinary deduction under § 162(a).

For the foregoing reasons, we AFFIRM the decision of the Tax Court.

AFFIRMED.