JAN H. AND MONIQUE M.J. VISSER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Visser
Docket No. 6161-89
United States Tax Court
T.C. Memo 1993-13; 1993 Tax Ct. Memo LEXIS 15; 65 T.C.M. (CCH) 1734; January 12, 1993, Filed *15 Decision will be entered for respondent. Jan H. Visser and Monique M.J. Visser, pro se. For Respondent: Steven J. Mopsick. FAY
FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income tax liability: Additions to Tax and Additional Interest
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)
6653(a)(1)
6653(a)(2)
6659
6621(c)
1979
$ 3,985
$ 199
- - $ 1,196
[2]
1980
5,688
284
- - 1,706
[2]
1981
5,932
- $ 297
[1]
1,780
[2]
1983
1,434
- 72
[1]
430
[2]
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Petitioners were involved in certain transactions with Agritech *16 Enterprises, Inc. (Agritech), and Sunburst Growers, Inc. (Sunburst), in which petitioners purchased a greenhouse to be constructed by Agritech and then entered into an agreement with Sunburst to manage and operate the greenhouse upon the completion of such construction. Petitioners claimed Schedule C losses and tax credits on their 1982 Federal income tax return and claimed Schedule C losses on their 1983 Federal income tax return as well as carrybacks resulting therefrom, with respect to the aforementioned transaction. The issues currently before us are: (1) Whether petitioners are entitled to an investment tax credit, business energy credit for solar equipment, and Schedule C deductions, which were disallowed by respondent, for a greenhouse which was never fully constructed nor was ever placed in service for the years at issue before the Court. We hold petitioners are not entitled to the deductions and credits claimed; (2) whether petitioners are liable for additions to tax for negligence or intentional disregard of rules and regulations under sections 6653(a) and 6653(a)(1) and (2). We hold petitioners are liable for the additions to tax for negligence; (3) whether petitioners *17 are liable for additions to tax for valuation overstatements under section 6659. We hold petitioners are not liable for the addition to tax for valuation overstatement; and (4) whether petitioners are liable for an increased rate of interest on deficiencies attributable to tax-motivated transactions under section 6621(c). We hold petitioners are not liable for an increased rate of interest under section 6621(c). FINDINGS OF FACT This case has been submitted for decision without trial, pursuant to Rule 122. Facts stipulated by the parties are so found. The stipulation of facts filed by the parties and attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Kensington, California. During the years at issue, petitioner Jan H. Visser was employed as a real estate broker and investor, while petitioner Monique M.J. Visser was employed as a piano teacher. Although not entirely clear from the record, at some time during November 1982, petitioners entered into a Confirmation of Purchase (the Confirmation) with Agritech. [1] *19 The Confirmation was for the purchase of a Model 35 Greenhouse System (the Greenhouse). The proposed *18 Greenhouse was to be of steel/fiberglass construction and consist of approximately 3500 square feet. Additionally, there was to be an automatic irrigation system and the Greenhouse was to be heated by an active solar pond system. Heated water generated in this pond was to be pumped through an above-ground pipe grid within the greenhouse which would transfer the water heat to the air, and such heat would then be distributed by large fans to the growing plants. [2]
On December 17, 1982, petitioners signed an agreement entitled "Contract for the Sale and Construction of Greenhouse" (the Agreement) with Agritech. The Agreement was dated as executed on November 3, 1982, although petitioners did not actually sign the document until December 17, 1982. Paragraph 4 of the Agreement provided that Agritech would complete construction of the Greenhouse by no later than December 31, 1982. The Agreement reflects a purchase price for the Greenhouse of $ 80,000. [3] Pursuant to paragraph 5, payment was to be made in the order as follows: (1) $ 17,500 on the execution of the Agreement; (2) $ 17,500 on December 20, 1982; and (3) the remaining balance of the purchase price to be evidenced by a promissory note in the amount of $ 45,000. No evidence was presented as to whether either of the $ 17,500 payments was ever made. The $ 45,000 *20 promissory note was executed on December 17, 1982. The note was financed at 12 percent interest per annum over a 10-year period. The due date of payments of principal and interest during the first 3 years is conditioned on positive cash flow from the greenhouse operation. By letter dated December 20, 1982, Agritech and petitioners modified the terms of the note to provide that in the event of default by petitioners, Agritech would accept an assignment of the interest in the ground lease [4] and a transfer of all title and interests to the Greenhouse provided such assignments are voluntarily made and not pursuant to a court judgment. *21 A grid map of the proposed Agritech greenhouse facility in Waller, Texas, was submitted by the parties. The site for construction of petitioners' Greenhouse was designated I-1, [5] meaning row I and position 1. On May 9, 1983, petitioners signed a document entitled "Greenhouse Operations Agreement" with Sunburst, whereunder Sunburst purportedly agreed to manage and conduct the operations of the Greenhouse owned by petitioners. The operations agreement with Sunburst in paragraph 1 stated the term of the agreement was to commence on December 15, 1982, which is prior to both the construction date and even the Agreement to construct the Greenhouse. From August 22, 1980, through May 14, 1985, Laura G. Williamson, an engineer for respondent, made several on-site inspections of the Agritech facility in Waller, Texas. Additionally, numerous aerial photographs were taken of the facility. During this time period, each individual greenhouse was *22 monitored to provide data regarding progress of construction and operation of each greenhouse system. Petitioners' Greenhouse, as previously mentioned, was designated I-1. Pursuant to an aerial photograph taken as of January 1982, row I of the facility had no improvements of any kind. The first documented information regarding actual construction of row I was an aerial photograph taken in March 1983. The photograph noted that development on row I includes the erection of frames and construction of excavation ponds used in the greenhouse system. Subsequently in February 1984, another aerial photograph showed that roofs still had not been installed for the greenhouses located on row I. During 1984, Ms. Williamson conducted on-site inspections of the property to determine actual development of the greenhouse operation. Two such inspections in the latter half of the year (September 19, 1984, and October 22, 1984) indicated the excavation ponds for row I were overgrown with weeds. As late as 1985, an aerial photograph showed the Greenhouse located at I-1 to still be without a roof although other greenhouses on row I had been fitted with roofs. These aforedescribed results compiled *23 by Ms. Williamson were substantially corroborated by an independent inspection and report prepared by Dr. Merle Jensen and Dr. C. Brent Cluff. The report indicated that the Greenhouse located on plot I-1 was neither completed nor in operation during the years at issue before the Court. As late as May 14, 1985, an on-site inspection by Dr. Jensen and Dr. Cluft indicated that the partially constructed solar ponds had eroded and that at no time was the Greenhouse located at plot I-1 equipped with plumbing, electricity, or a heating system, all of which would be required to have an operational greenhouse system. [6]
On their 1982 income tax return, petitioners claimed deductions and credits arising from a claimed investment in a solar greenhouse operation as follows: (1) Schedule C deduction for depreciation in the amount of $ 12,000; (2) investment tax credit of $ 8,000; and (3) *24 a business energy credit for solar equipment in the amount of $ 12,000. [7] In computing the deductions for depreciation and the credits relating to the Greenhouse, petitioners used an adjusted basis of $ 80,000. Subsequently, on their 1983 income tax return, petitioners claimed Schedule C deductions in the amount of $ 17,954 (such amount arising from depreciation, insurance, tax, and other expenses). Respondent, in the notice of deficiency, on February 2, 1989, disallowed all of petitioners' deductions taken with respect to the property for the years 1982 and 1983. The disallowance by respondent of these deductions and credits resulted in deficiencies for the years in issue other than 1982 and 1983 solely because of the adjustments required to petitioners' claimed carryback tax credits. OPINION At the outset, it should *25 be noted that the documentary evidence in this case is sketchy and incomplete. Petitioners did not submit or produce any individual records, and documentary evidence as to the structure of petitioners' transaction with Agritech and Sunburst was provided by respondent from microfilm records relating to audits previously conducted on Agritech. As an underlying principle in analyzing this case, it should be stated that deductions and credits are a matter of legislative grace, and taxpayers must satisfy the specific statutory requirements of the item claimed. Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Petitioners bear the burden of proving their entitlement to the claimed deduction or credit. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Furthermore, section 6001 and the regulations promulgated thereunder require taxpayers to maintain adequate records in substantiation of the claimed deductions, credits, and other matters required to be shown on their tax returns. Petitioners' inability to produce their records *26 does not relieve them of their burden of proof. See Estate of Mason v. Commissioner, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977). [8]
*27 Even in the absence of adequate substantiation, we generally may, if convinced by the evidence, estimate the amount of deductible expenses incurred. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Such an estimate must, however, have some reasonable evidentiary basis. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). As previously stated, the record before the Court is sparse. This may be due in large part to petitioners' request to submit this case under Rule 122, prior to having an adequate record before the Court. This Court is required to rely on the record before it, and such record is devoid of any evidence upon which the claimed Schedule C deductions could be allowed. Petitioners have not provided any documentation with respect to the claimed deductions for insurance, rent, or taxes for 1983. Because we have no reasonable evidentiary basis, we choose not to exercise our discretion and estimate any claimed deduction. [9]Id.
*28 The deductions claimed for depreciation and investment credits for the years at issue where taken on the assumption that petitioners had an initial basis of $ 80,000 in the Greenhouse, such amount being made up of an initial cash payment of $ 17,500, another cash payment of $ 17,500, and a $ 45,000 promissory note. No evidence was ever presented as to whether either of the cash payments was ever made, nor was evidence ever presented as to whether payments were ever made on the note. In fact, the record indicates that more than one note may have been present. [10] We choose not to "guestimate" the amount of petitioners' basis and, therefore, disallow any claimed deduction for depreciation or investment credits. *29 Petitioners were informed during pretrial preparation by this Court and respondent on numerous occasions the burden of proof would be imposed on them, but such instructions fell on deaf ears. Instead, petitioners chose to raise numerous constitutional arguments regarding perceived defects in the Internal Revenue Code and Constitution of the United States. We have long held that such arguments are frivolous. Greenberg v. Commissioner, 73 T.C. 806, 810 (1980), and cases cited therein. This Court should not be used as a forum for petitioners to vent their anger and frustration at the tax system and Government. Hatfield v. Commissioner, 68 T.C. 895, 899 (1977). While this case could be resolved on the burden of proof point alone, we choose to also address a more fundamental defect in petitioners' claimed deduction for depreciation and investment credits. It is generally stated that depreciation and investment credits are only allowed in the year in which qualifying property is "placed in service" by taxpayers. Secs. 38(a), 46(a)(1) and (2), (c)(1). Section 1.167(a)-11(e)(1)(i), Income Tax Regs., provides in part: *30 Property is first placed in service when first placed in a condition or state of readiness and availability for a specifically assigned function * * *. In general, the provisions of paragraph (d)(1)(ii) and (d)(2) of § 1.46-3 shall apply for the purpose of determining the date on which property is placed in service * * *
Section 1.46-3(d), Income Tax Regs., provides in part: (d) Placed in service. (1) For purposes of the credit allowed by section 38, property shall be considered placed in service in the earlier of the following taxable years: (i) The taxable year in which, under the taxpayer's depreciation practice, the period for depreciation with respect to such property begins; or (ii) The taxable year in which the property is placed in a condition or state of readiness and availability for a specifically assigned function, whether in a trade or business, in the production of income, in a tax-exempt activity, or in a personal activity.
From August 22, 1980, through May 14, 1985, respondent's agents conducted periodic inspections of the greenhouse facility at Waller, Texas. The report submitted by respondent clearly showed that petitioners' Greenhouse, *31 on plot I-1, was never fully constructed nor operational during the years at issue. [11] These results were substantially corroborated by respondent's independent experts, Dr. Merle Jensen and Dr. C. Brent Cluff, who also inspected the property. Petitioners submitted no evidence to refute these contentions. In fact, in their reply brief, petitioners admitted the Greenhouse was never placed in service during the years at issue. Therefore, even if petitioners could substantiate their basis in the Greenhouse, the depreciation and investment credits would have been disallowed because the Greenhouse was never "placed in service". Additions to Tax Under Section 6653(a)(1) and (2)
Respondent's notice of deficiency asserts the negligence *32 penalty provided under sections 6653(a), and 6653(a)(1) and (2). Section 6653(a) for 1979 and 1980 and section 6653(a)(1) for 1981 and 1983 imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of the rules and regulations. Section 6653(a)(2) for the years 1981 and 1983 imposes an addition of 50 percent of the interest on the portion of the underpayment attributable to negligence. Negligence under section 6653(a) is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 937 (1985). Respondent's determination of negligence is presumed correct, and petitioners bear the burden of proving otherwise. Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337. Petitioners failed to produce any regularly maintained records or documentation *33 of their deductions or records upon which their basis in the Greenhouse could be calculated. See sec. 1.6001-1(a), Income Tax Regs. During pretrial discussions with this Court, petitioners were warned of their burden to substantiate their claimed deductions and credits in the instant case but failed to heed the Court's warning. Additionally, petitioners admitted that the Greenhouse was never placed in service, but continued to claim deductions for depreciation and investment credits. Petitioner Jan Visser was employed as a real estate broker during this time period, and we find it hard to believe he was not aware of the basic rules regarding depreciation and investment credits. Based upon these determinations and upon the fact that petitioners did not even attempt to offer any evidence or address this issue on brief, we uphold respondent's determinations with respect to the sections 6653(a) and 6653(a)(1) and (2) additions to tax. Addition to Tax Under Section 6659 and Increased Interest Under Section 6621(c)
Section 6659(a) imposes a graduated addition to tax on an underpayment "attributable to a valuation overstatement". A valuation overstatement exists "if the value *34 of any property, or the adjusted basis of any property, claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis". Sec. 6659(c). Section 6621(c) provides for interest at the rate of 120 percent of the normal rate (under section 6601) on underpayments with respect to any substantial underpayment attributable to tax-motivated transactions. Section 6621(c)(3)(A)(i) categorizes "any valuation overstatement (within the meaning of section 6659(c))" as a tax-motivated transaction. [12]
The disallowance of the deduction for depreciation and investment credits is based on two separate legal theories. First, petitioners failed to meet their burden of proof by not adequately *35 substantiating the basis of the Greenhouse. Secondly, the Greenhouse was not placed in service in the years before the Court. As a result of our conclusions, we find it unnecessary to make a finding as to whether a valuation overstatement was present. See Todd v. Commissioner, 89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988). Petitioners are not liable for either the addition to tax under section 6659 or the increased interest under section 6621(c). Gainer v. Commissioner, 893 F.2d 225 (9th Cir. 1990), affg. T.C. Memo. 1988-416. Decision will be entered for respondent. Footnotes
2. Interest on substantial underpayment attributable to tax-motivated transaction (formerly sec. 6621(d)↩).
1. Fifty percent of interest due on the deficiency.↩
1. On Nov. 3, 1982, petitioner Jan H. Visser signed a document entitled "Confirmation of Purchase", which purports to reflect the purchase by petitioners of a 100-percent interest in a Model 35 Greenhouse System (the Greenhouse) from Agritech Enterprises, Inc. (Agritech). The stated purchase price is $ 115,000. On Nov. 8, 1982, petitioner Jan H. Visser signed another document entitled "Confirmation of Purchase" reflecting a purchase price of $ 85,000. The $ 30,000 differential appears to result from whether petitioners were also purchasing a research development program from Research Associates, Inc., to be used in conjunction with the Greenhouse System.↩
2. Because we reach the result on different grounds, we choose not to address the issue of whether the Greenhouse would be qualified for the business energy credits based on its proposed construction. See sec. 1.48-9(d), Income Tax Regs.↩
3. This $ 80,000 amount being less than either one of the previously executed Confirmations of Purchase previously signed by the petitioners.↩
4. The Lease Agreement was entered into between Earl T. Smith and petitioners for a period commencing on Jan. 4, 1982, and continuing until Dec. 31, 1996. The lease was actually signed by petitioners on Dec. 17, 1982. Annual rental payments were due in the amount of $ 75, the first payment being due on the execution of the lease.↩
5. This opinion is intended to relate solely to the Greenhouse designated I-1.↩
6. It should be noted that fiberglass sides and a plastic roof had been constructed as of May 14, 1985, for the Greenhouse located at I-1.↩
7. Throughout the text of the opinion, "credit" or "investment credit" is defined to include both the investment tax credit of $ 8,000 and the business energy credit for solar equipment of $ 12,000.↩
8. On brief, petitioners claimed that, during the audit conducted in 1984 or 1985, all of petitioners' files were given to an auditor of respondent. We assume that petitioners may be attempting to shift the burden of proof to respondent by making such an assertion. However, even if we view such assertion as true, petitioners must still show more than merely the unintentional loss of the records by respondent to shift the burden. American Police & Fire Foundation, Inc. v. Commissioner, 81 T.C. 699, 706 (1983). Based upon the scant record before us, we are unable to conclude that respondent's agents negligently lost the records or, in the alternative, whether petitioners themselves lost the records or simply chose not to produce the requested records. As a result, we are unable to find and have not been presented with any rational basis upon which to shift the burden of proof to respondent, and, therefore, the burden remains with petitioners. Id. at 707. "The inability to produce a record which is unintentionally lost, whether by the petitioner, the Commissioner, or by a third party, alters the type of evidence which may be offered to establish a fact, but the rule does not affect the burden of proving a fact." Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979). "Where taxpayers lose their records due to circumstances beyond their control, they still must substantiate their asserted deductions by reconstructing the expenditures through other credible evidence." Knoff v. Commissioner, T.C. Memo. 1992-624. Secondary evidence may be submitted when an original document is unavailable to prove its contents. Fed. R. Evid 1004↩. The Federal Rules of Evidence are applicable in Tax Court proceedings. Sec. 7453; Rule 143.
9. The Lease Agreement did provide for an annual rental of $ 75 per year upon the execution of the lease. However, no deduction was claimed for the tax year 1982 and, therefore, we have grave reservations as to whether a rental payment was actually made in tax year 1983.↩
10. The letter from which this information was taken provided that petitioners had two notes outstanding with Agritech. Because of our subsequent analysis regarding when the Greenhouse was "placed in service" we do not address whether petitioners should receive credit for the notes as part of their basis in the Greenhouse or whether sec. 465 would limit such basis. Additionally, such a determination would not be appropriate because this Court has only been provided with a copy of one of the notes.↩
11. Generally, use of an asset during construction does not satisfy the placed in service requirement. Noell v. Commissioner, 66 T.C. 718, 729 (1976). The asset is considered placed in service when available for full operation on a regular basis. Id.↩
12. The penalty applies only to interest accruing after Dec. 31, 1984, regardless of the date the return was filed. Solowiejczyk v. Commissioner, 85 T.C. 552 (1985), affd. without published opinion 795 F.2d 1005↩ (2d Cir. 1986).